SAMUEL ORBACH *vs.* PARAMOUNT PICTURES CORPORATION.

Middlesex.   March 12, 1919. — June 24, 1919.

Present: RUGG, C. J., LORING, DE COURCY, PIERCE, & CARROLL, JJ.

*Damages,* Loss of prospective profits. *Contract,* Performance and breach, Construction. *Evidence,* Competency. *Theatre,* For display of moving pictures.

At the trial of an action for the breach of contracts by a corporation, which was a distributor of moving picture films, to furnish to and to license the plaintiff to exhibit at his theatre in Lowell a certain number of films, each for three successive days, which portrayed certain well known and popular artists, the defendant contended that the contracts never were executed, but the jury found, on evidence warranting the finding, that the contracts were made as alleged. There was no performance by the defendant, and it contended that there was no evidence competent to show that the plaintiff had suffered any damage. The plaintiff introduced evidence tending to show what were his gross receipts week by week and what were his actual expenses during the period when, if the contracts had been performed, he would have been exhibiting the defendant's films; what his expenses would have been with the defendant's films during that period; what his gross receipts were week by week during the pre-

ceding year, when he showed films inferior to the defendant's; that, during the period in question, another theatre than his in Lowell, subject to the same conditions as to competition but at an inferior location and with a larger seating capacity, which was exhibiting the defendant's films, had crowded houses and turned patrons away; that the patronage of such theatres depended upon the particular artists who were being portrayed, and that the contracts in question called for films portraying first class artists in pictures never before exhibited in Lowell. *Held,* that the evidence was competent to give the jury a satisfactory basis on which to find substantial damages.

The contracts above described each contained a clause providing that either party to them, by a notice given within ten days after the exhibition of any picture, might limit the contract to one additional picture upon the delivery of which the contract should terminate. The defendant contended that the damages should be limited to the loss caused by the plaintiff being deprived of one picture under each contract. There was no evidence that the defendant gave any such notice as the contract called for. The judge instructed the jury that, in determining the extent of the plaintiff's damages, this possibility of termination of the contracts should be considered. *Held,* that the provision in the contract did not mean that the defendant might elect either to repudiate the contracts in the beginning or to terminate them by notice and that in either event damages should be limited to such as were caused by the loss of one picture under each contract; and that the instruction given by the judge was sufficiently favorable to the defendant.

CONTRACT, by amendment from a bill in equity for specific performance, filed in the Superior Court on September 14, 1917, for breach of six agreements in writing to furnish to the plaintiff films of moving pictures for exhibition in his theatre.

In the Superior Court the action was tried before *Hitchcock,* J. The material evidence is described in the opinion. At the close of the evidence, the defendant asked for, and the judge refused to give, the following rulings among others:

"1. On all of the evidence the defendant is entitled to a verdict.

"2. The plaintiff has not established that a contract had been approved and executed by an authorized officer of the defendant company."

"6. If a contract for the delivery of motion pictures is for a given period but could be cancelled at any time, by either party, which cancellation to take effect after the delivery of two pictures, then the value of the contract is limited to two pictures.

"7. If the jury shall find that the contracts between the parties had been completed, they shall find that the same were for the delivery of two pictures under each contract which by their

terms contained the option of cancellation by either party after the delivery of two pictures.

"8. If the jury finds that the contracts were executed by the defendant, then notice by the defendant to the plaintiff on June 27, 1917, that his contracts had been rejected for the delivery of pictures must be construed as a limitation of the contracts to the delivery of two pictures only under each contract, and the defendant would be liable only for the non-delivery of two pictures for three days each under each contract.

"9. If the jury shall find that the contracts were executed by the defendant company, then the damages, if any, must be limited to the failure to deliver the pictures of the several stars in the aggregate for thirty-six days or six weeks."

"12. If the jury finds that the contracts had been executed by the defendant, then the fact that the plaintiff brought suit on September 14, 1917, shows an admission on the part of the plaintiff that the defendant had exercised its option to limit its contract to two pictures."

"17. If the jury finds that the contracts had been completed between the parties, then there is no satisfactory basis of comparison on which to reckon the profits, if any, which might have been received by the plaintiff if the defendant had fulfilled the contract.

"18. There are too many elements of uncertainty and conjecture to make it safe to rely on evidence such as the plaintiff offered."

"21. If on all the evidence the jury shall find that there was a contract between the plaintiff and defendant, then the plaintiff is entitled to nominal damages only for the breach of the same."

Material portions of the charge are described in the opinion.

The jury found for the plaintiff in the sum of $6,427; and the defendant alleged exceptions.

*F. N. Nay,* (*M. L. Levenson* with him,) for the defendant.

*A. S. Howard,* (*B. Silverblatt* with him,) for the plaintiff.

DE COURCY, J.   The plaintiff, who owned and operated the Owl Theatre in Lowell, seeks to recover damages from the defendant, a distributor of motion picture films, for breach of six written contracts. Under these agreements the defendant, during the year beginning September 1, 1917, was to release a certain number of films or plays, in which designated well known

"stars" enacted the leading role; and to license the plaintiff to exhibit one copy of each of the films at his theatre for three successive days, at a specified price. The defendant now concedes that there was evidence which, if believed, warranted the jury in finding that the alleged contracts were executed and delivered. No films were actually furnished, the defendant contending at the trial that no contract was executed. This disposes of the first and second requests for rulings, dealing with the issue of liability.

While admitting that the plaintiff is entitled to prevail, the defendant strongly urges that the evidence of loss sustained by the plaintiff by reason of the breach of contract was too remote and speculative to sustain a verdict for more than nominal damages. The trial judge in instructing the jury as to the general rule applicable adopted the following language of this court in *Lowrie* v. *Castle*, 225 Mass. 37, 51: "Prospective profits may be recovered in an appropriate action when the loss of them appears to have been the direct result of the wrong complained of and when they are capable of proof to a reasonable degree of certainty. They need not be susceptible of calculation with mathematical exactness, provided there is a sufficient foundation for a rational conclusion. . . . But such damages cannot be recovered when they are remote, speculative, hypothetical, and not within the realm of reasonable certainty." There was evidence that at the time when the defendant repudiated its contracts and refused to furnish the films which it controlled, and which were of moving picture "stars" especially popular with theatrical patrons, it was too late for the plaintiff to secure adequate substitutes for the coming theatrical year; and that as a natural result, and one presumably within the contemplation of the parties, the audiences attracted to the Owl Theatre were diminished in number and the income correspondingly reduced. Speaking accurately, such loss would be the ordinary damage consequent on the defendant's failure to furnish the pictures as agreed, rather than a loss of "special profits."

In proving the loss he sustained, the plaintiff offered evidence (1) of the net profits of his theatre during the period involved; and (2) of what the net profits probably would have been during that period if the defendant had carried out its contracts. As to

(1) he presented a detailed report of the gross receipts from September 1, 1917, until he sold out his theatre in March, 1918; and it could be found that he obtained all the income he reasonably could. The actual expenses during this period were $250 a week for film service, and $250 for other expenses. Plainly this was competent. As to (2), the expenses of running the theatre if the plaintiff had obtained the defendant's pictures would not differ from those actually incurred, except in the larger sum to be paid for films, — which item could readily be ascertained. The only uncertain element to be established was the probable additional income which would have accrued if the plaintiff had been allowed to exhibit the films specified in the contracts. On that issue he showed the gross receipts of his theatre, week by week, during the preceding year, as well as after September 1, 1917; thus indicating what his theatre, located and appointed as it was, could earn even with pictures of a grade inferior to Paramount films. *Loughery* v. *Huxford*, 206 Mass. 324. *Nelson Theatre Co.* v. *Nelson*, 216 Mass. 30. Most significant was the evidence that the Merrimack Square Theatre, situated on a side street in the same city, while exhibiting these same Paramount pictures, and at the very time that the defendant had contracted to let the plaintiff have them, drew crowded houses and people were turned away. This theatre had a larger seating capacity than the Owl, and was subject to the same conditions as to competition. There was also evidence that the patronage of a theatre depends on the particular "star" who is being exhibited, that the Paramount had the "finest stars," as compared with those of other companies, and that the contracts contemplated "first run" pictures, that is pictures which never before had been exhibited in Lowell. Unlike cases such as *Todd* v. *Keene*, 167 Mass. 157, we cannot say as matter of law that the evidence afforded no satisfactory basis on which a jury would be warranted in finding more than nominal damages. We find no error in the refusal to give the defendant's requests numbered 17, 18 and 21. No exception was taken to the judge's charge. *Weston* v. *Boston & Maine Railroad*, 190 Mass. 298. *Gagnon* v. *Sperry & Hutchinson Co.* 206 Mass. 547. *Neal* v. *Jefferson*, 212 Mass. 517. *Nelson Theatre Co.* v. *Nelson, supra. Barry* v. *New York Holding & Construction Co.* 226 Mass. 14.

The remaining requests are based upon paragraph "Tenth" in the several contracts, which reads: "Either party to this agreement may, by notice by registered mail, given within ten days after the exhibition of any picture of said series in the Exhibitors' theatre, limit this contract to one additional picture, and upon the delivery for exhibition of said additional pictures, this contract will terminate with the same effect as if said picture were the last of the series above referred to." The trial judge instructed the jury that in determining the plaintiff's loss they should take into consideration this possibility that his contract might be terminated. It seems to us that this was sufficiently favorable to the defendant. By the express terms of the mutual cancellation provision the option was to be applicable only after the exhibition of at least one picture under the contract; and after notice by registered mail, within ten days after such exhibition, of the decision to limit the contract to one additional picture. As matter of fact the defendant never exercised its option to thus limit its liability. On the contrary, it expressly denied the existence of any contract. See *R. H. White Co.* v. *Remick & Co.* 198 Mass. 41, 49. When at the trial it contended for the first time that the plaintiff's damages must be limited to the failure to deliver for three days two pictures under each of the six contracts in suit, the option had continued in existence during the entire contract year without any attempt by the defendant to exercise it. See *Whiting* v. *Price,* 172 Mass. 240. The jury well might believe that if the defendant had once begun the delivery of pictures under its contract, acting in good faith and in accordance with sound business judgment, in all probability it would have furnished the full measure of performance under the contract, as being most profitable to itself in the circumstances. *Speirs* v. *Union Drop Forge Co.* 180 Mass. 87, 90. *Randall* v. *Peerless Motor Car Co.* 212 Mass. 352, 380.

We do not construe the tenth paragraph of the contract as giving the defendant the option to repudiate its contract from the beginning, or to perform it in part, and to permit it in either event to confine the plaintiff's damages to the loss occasioned by the non-performance of the alternative least beneficial to him. See Sedg. Damages, (9th ed.) §§ 421, 424a. *Watson* v. *Russell,* 149 N. Y. 388. It provided the defendant with an option which

it never exercised, and which it cannot now exercise after repudiating the contract in its entirety.

*Exceptions overruled.*