WELLINGTON PIANO CASE COMPANY *vs.* GARFIELD AND PROCTOR
COAL COMPANY.

Worcester.     September 27, 1920. — December 20, 1920.

Present: RUGG, C. J., BRALEY, CROSBY, CARROLL, & JENNEY, JJ.

*Contract*, Construction, Performance and breach.   *Practice, Civil*, Exceptions.
*Words*, "Fair proportion."

Where, under a contract for the sale of "thirty cars" of coal at a certain price per
ton "at the mine," which provides that "the seller will not be responsible for the
delivery of the same if prevented by . . . interruption of transportation or navi-
gation, or from any cause or any occurrence beyond his control," the purchaser,
at a time when no shipment by railroad can be made because of an embargo
upon railroad transportation which was not the fault of the seller, gives an
order for the shipment of a car, the seller is not required to make a shipment by
water and cannot be held liable for damages resulting to the purchaser from his
failing to do so.

Under the provisions of the contract and in the circumstances above described,
the embargo on shipment by railroad excused the defendant from making a
shipment while the embargo continued.

Where, at the hearing by a judge without a jury of an action of contract for damages
resulting from failure of the defendant to make several shipments of coal, the
judge was asked to rule generally that his finding should be for the defendant
and refused the request and found for the plaintiff as to several breaches of the
contract, an exception to the refusal of the request must be overruled if a find-
ing for the plaintiff in any amount was warranted, although it appears that
the judge's finding as to one of the breaches was erroneous.

A further provision of the contract above described, which was dated June 6, 1916,
was that the purchaser would "take in a fair proportion of this coal prior to Oc-
tober 1." The seller knew that the capacity of the purchaser's bins was limited
to four car loads. The purchaser was ready and willing to accept five car loads
before October 1. The judge found that a "fair proportion" did not mean fifty
per cent of the entire amount to be supplied under the contract, and that the five
cars which the purchaser was ready and willing to receive was a "fair proportion"
of the contract requirements. *Held*, that no error of law was shown in the
finding and ruling.

In a bill of exceptions of the defendant in the action above described, it was stated
that "all the material evidence is included herein." A general finding for the
defendant would not have been warranted by the evidence reported. Certain
subsidiary findings, which were favorable to the defendant, were unsupported
by any evidence. There was a finding for the plaintiff. There were no errors of
law, excepted to by the defendant, that affected the finding for the plaintiff.
*Held*, that the defendant's exception must be overruled.

CONTRACT for breach of an agreement by the defendant to sell and deliver to the plaintiff thirty cars of coal. Writ dated February 1, 1918.

Copies of letters which formed the basis of the agreement were annexed to the declaration. Material portions of the letter of the defendant to the plaintiff under date of June 6, 1916, read as follows: "Confirming our Mr. Taylor's conversation with you yesterday, we have entered your order for thirty cars of our Thermit Bituminous coal at $1.75 per gross ton at the mine. We understand you will take in a fair proportion of this coal prior to October 1st." As a part of the letter were the following among other "Terms and Conditions": "When coal that has been ordered is not sent for or directed to be shipped within the time contracted for the shipper shall have the option of shipping it at current rates of freight, or cancelling such portions of the order as may not have been filled. . . . Every effort will be made for the prompt and faithful fulfilment of contracts, but the seller will not be responsible for the delivery of the same if prevented by accidents or other unavoidable occurrences on the railroads, strikes or combinations of miners, laborers or boatmen, accidents in the mines, or interruption of transportation or navigation, or from any cause or any occurrence beyond his control. In such cases the obligation to deliver coal under such contracts is thereby cancelled to an extent corresponding to the duration of such interruption, and no liability shall be incurred by the seller for damages resulting therefrom." Material portions of the plaintiff's reply to this letter under date of June 12, 1916, read as follows: "We acknowledge yours of the 9th inst. confirming our order given by your Mr. Taylor for Thermit Bituminous Coal, price $1.75 a ton at the mine. Thirty cars is approximately what we shall use, it will not be any more than that, and presume it will be a few cars less. As per conversation with Mr. Taylor we will arrange to have our bunks full by October 1st. We will do everything possible to give you advance notices, and shall expect you to ship promptly."

In the Superior Court, the action was heard by *N. P. Brown,* J., without a jury. Material evidence at the trial and facts found and rulings made by the judge are described in the opinion. There was a finding for the plaintiff in the sum of $1,255.91, and the defendant alleged exceptions.

In the bill of exceptions was the statement, "All the material evidence is included herein."

The case was submitted on briefs.

*H. N. Berry & C. C. Bucknam,* for the defendant.

*C. F. Baker & E. W. Baker,* for the plaintiff.

CARROLL, J.  This is an action of contract to recover damages for the defendant's failure to deliver coal to the plaintiff at Leominster.  On June 6, 1916, the defendant accepted the plaintiff's order for "thirty cars of our Thermit Bituminous coal at $1.75 per gross ton at the mine."  The freight charges were $3.05 per ton, making the price at Leominster $4.80 a ton.  The plaintiff, on June 26, 1916, and again on July 5, 1916, ordered one car.  The defendant under these orders made shipments on August 14 and on August 21, 1916, railroad embargoes preventing earlier deliveries, and in consequence of this delay the plaintiff purchased coal in the open market at a total cost of $49.96 above the contract price.  On January 6, 1917, the plaintiff directed the defendant to deliver four cars a month thereafter, none of which was received, and the plaintiff paid for seven cars purchased in the open market the sum of $1,091.78 in excess of the contract price.  The case was heard by a judge without a jury and it was found that the plaintiff could recover these amounts with interest.  Judgment was ordered for $1,255.91.

1. The first question to be disposed of is that of the damages allowed the plaintiff for delay in delivering the coal ordered on June 26, 1916, and on July 5, 1916.  Thermit was a trade name for coal mined at certain mines not owned by the defendant.  It was found that the railroad embargoes prevented the defendant from making said deliveries until August 14 and August 21, but that it was not beyond the power of the defendant to transport the coal by water, and on this ground the plaintiff recovered the item of $49.96 damages.  The defendant had made no agreement to carry the coal by water.  There was no evidence that the method of transportation originally agreed on was changed by subsequent agreement.  The contract called for thirty cars at a certain price at the mine, and the order on June 26 and on July 5 was for a single car of coal.  From such orders it was to be expected that the coal was to be shipped in railroad cars.  It does not appear where the mines were located, and even if a shipment could be made there-

from immediately by water, it is manifest that deliveries could not be completed without to some extent relying on railroad transportation. Even if it were customary to carry coal in carload lots by water, there is nothing indicating that this method of transportation was contemplated. The contract provided that the defendant was not to be held for the prompt fulfilment of its requirements if transportation was interrupted, or "from any cause or any occurrence beyond his control." By letter dated July 21, 1916, the plaintiff stated its assumption that the defendant had facilities for furnishing coal by water. To this the defendant answered on the following day that on account of the high rates "of vessel freight, it is impossible to deliver coal in such towns as Leominster, except at a considerable advance over the delivered price on rail shipments and for this reason we cannot afford to ship coal in this way." While this letter was referred to by the plaintiff, it made no objection to the statement contained therein and gave no direction to send the coal by water. The transportation charges were to be paid by the plaintiff, but it gave the defendant no authority to ship by water, and it never assented to the additional expense involved in this mode of transportation. According to the understanding of the parties, as shown by the contract and correspondence, the coal was to be delivered in cars by rail, and it was not contemplated that it was to be carried otherwise or shipped by water.

The delay in delivering the coal was caused entirely by the railroad embargo; and without fault on its part the defendant was unable to carry out the contract. It is not contended that there was any delay in making delivery after the railroad embargo was removed. Even in the absence of a stipulation in the contract providing for the interruption of transportation, the defendant might contend that it was excused because the contemplated means of performance had become impossible, see *Rowe* v. *Peabody*, 207 Mass. 226, 232, 233, and cases cited, but we are not called upon to decide that question. In the case at bar the contract provided that no liability was incurred by the defendant for damages caused by delay in making deliveries where transportation was interrupted, "or from any cause or any occurrence beyond his control." The rights of the parties are to be governed by their agreement, which contemplated that coal was to be carried by rail, and not by

water; and when it became impossible to carry out this provision, the defendant could not be held for the resulting damages. It follows from this that the plaintiff was not entitled to damages for delay in making deliveries requested on June 26 and on July 5.

We have thought it proper to consider this question, and although we are of opinion that the conclusion reached by the judge on this branch of the case was erroneous, as the case is presented to us, we cannot correct the error; the attention of the court was not called to the matter now under discussion, the only request bearing on it being a general request for a finding for the defendant. As we think the plaintiff is entitled to recover damages for the failure to make deliveries in 1917, this general request was refused properly.

2. Orders for one car on October 9, October 24, November 16 and December 1, 1916, were sent and deliveries were made October 16, November 8, December 2, and January 4, 1917. On January 6, 1917, the plaintiff requested the defendant to ship four cars each month. None of these cars was delivered and in January, February and March, 1917, the plaintiff purchased in the open market seven cars of coal for which it paid $1,091.78 in excess of the contract price, and damages in this amount were allowed. In the findings of the judge it is stated that none of the coal ordered in January was delivered because, among other reasons, of the railroad embargo then existing. The contract contemplated a shipment by rail and if it were a fact that a railroad embargo prevented the use of this means of transportation, then the defendant was excused from performance, and the plaintiff could not recover for this failure to furnish the coal ordered in the year 1917. We are, however, unable to find any evidence that during the year 1917 there was a railroad embargo. The record purports to contain all the material evidence; and so far as appears there is nothing bearing on this question except that there was "no embargo after August 2." Considering this date as stated in the record, in connection with the correspondence and the finding of the court with reference to the delay in making deliveries in 1916, we understand it refers to the year 1916, and therefore, according to the record, there was no railroad embargo in the year 1917 which prevented the defendant from delivering the coal ordered during that year; the finding

that the plaintiff could recover this item was in accordance with the evidence.

The contract provided that the plaintiff would "take in a fair proportion of this coal prior to October 1st." The defendant contended that a "fair proportion" meant fifty per cent of the entire amount to be furnished, and as the plaintiff was supplied with five cars prior to October 1, 1916 (two of which were delivered by the defendant and three purchased by the plaintiff in the open market), the entire amount that the defendant was required to deliver after October 1, was five cars, four of which had been delivered. The defendant knew that the capacity of the plaintiff's bins was limited to four cars. The judge found that a "fair proportion" of the coal to be delivered before October 1 did not mean fifty per cent of the entire amount to be supplied under the contract, and that the plaintiff was ready and willing to accept prior to October 1, five cars, which number was a fair proportion of the contract requirements. Taking all the circumstances into account and considering all the evidence, there was no error of law in finding that this contention of the defendant was without merit.

Terms of payment were "cash thirty days from date of bill." The plaintiff has never paid for the cars shipped on December 2, 1916, and on January 4, 1917. The defendant contends that the failure to make these payments was a material breach of the contract, which excuses it from further performance. On this branch of the case the judge found that the refusal of the plaintiff to pay for the cars shipped on December 2, 1916, and January 4, 1917, after repeated demands for payment, was a breach of the contract; and that the relations of the parties continued unchanged until April 25, 1917, when the plaintiff refused to pay for the shipments of December 2 and January 4 on the ground that it was holding the sum due "as an offset to what it claimed the defendant owed it on account of excess cost of purchasing coal in the open market."

The record is entirely bare of any suggestion that payment was at any time demanded or refused. The plaintiff from the beginning was ready and willing to carry out the contract according to its terms. It insisted that thirty cars of coal should be delivered, and refused to accept the defendant's construction of the contract. As late as December 28, 1916, in a letter to the defendant, it stated its demand that every car should be shipped as

agreed, and on the following day called the defendant's attention to the delay and stated that it would look to the defendant for damages if the contract was not lived up to.  In August, 1916, the defendant notified the plaintiff that no deliveries would be made after October 1 in excess of the amount delivered prior to that date; and in September it gave this same excuse for refusing to fulfil the contract.  The last car was shipped on January 4, 1917.  On January 9 the defendant repudiated the contract and refused to be bound by it, relying on its construction of the contract that it had already shipped four cars and would within a short time ship the fifth and last car.  The plaintiff replied to this letter on January 11, 1917, again insisting on the performance of the contract and requesting a shipment of four cars a month.  It does not appear that after this letter of January 11 there was any further correspondence or negotiations between the parties, and the defendant did not at any time deliver the "fifth and last car" referred to in the letter of January 9.

The correspondence shows that no demand for payment was made at any time.  The defendant's only excuse for not carrying out the contract was the railroad embargo and that under the contract only five cars were to be delivered after October 1.  It never based its refusal to perform on the ground that the plaintiff refused to pay, and there is nothing in the record to show that "repeated demands for payment" were made or that on April 25, 1917, the plaintiff refused to pay on the ground that it was withholding payment as an "offset to what it claimed the defendant owed it."  There is nothing in the reported evidence indicating that complaint was ever made of the plaintiff's failure to pay for any of the shipments.  The judge gave the twenty-third and twenty-fourth requests of the defendant, to the effect that the plaintiff's refusal to pay for the shipments of December 2 and January 4 or either of them was a material breach of the contract.  But in his statement of findings of fact, he states that the refusal to pay for the cars shipped December 2 and January 4, after repeated demands, was "without legal justification and constituted a breach of the contract which entitled the defendant to repudiate any obligation thereafter to furnish the plaintiff any coal . . . which it did."  As we construe this finding, there was no default of payment until thirty days after the shipment of

January 4.   Even if this finding could be construed to mean that the mere failure or neglect of the plaintiff to pay for the car shipped on January 4 was of itself a material breach of the contract, the finding was not warranted by the evidence.   On January 9, before payment was due on the shipment of January 4, the defendant positively refused to carry out the contract according to its terms.   It also refused to supply the car which in the letter of January 9 it promised to deliver.   The judge found that the defendant "diverted the said car" which was then in transit.   The defendant's letter of January 9 was in reply to the plaintiff's letter of January 6 ordering four cars a month.   The defendant not only refused to comply with that request and carry out the contract in conformity with its true intent, but refused to comply with the contract according to its own interpretation of it.   As the contract had been finally repudiated by the defendant both by letter and conduct before payment was due, it could not be found that the failure of the plaintiff to pay excused the defendant from performing the contract.   See *Ballou* v. *Billings,* 136 Mass. 307; *Randall* v. *Peerless Motor Car Co.* 212 Mass. 352, 377.

The right of the defendant to recover for the deliveries in December and January does not appear to have been raised in these proceedings.   As we have said, there was not, according to the evidence reported, any railroad embargo preventing the delivery of coal after August 2, 1916.   The plaintiff was entitled to receive the amount of coal ordered, and as there was no material breach of the contract on its part, we see no reason why it should not recover.   Although there was error in allowing damages for delay in deliveries during the year 1916, when a railroad embargo prevented shipment by rail, the point was not raised at the trial and is not now open to the defendant.   Other errors which have been pointed out do not seem to us to affect the final conclusion of the trial judge.   *Davis* v. *Boston Elevated Railway,* 235 Mass. 482. The plaintiff could recover for the defendant's neglect to supply the coal ordered in the year 1917, and the judgment in its favor must stand.   There was no error in refusing the defendant's requests.

*Exceptions overruled.*