VITAGRAPH, INC. *vs.* PARK THEATRE COMPANY OF BOSTON.

Suffolk.    January 22, 1924. — May 19, 1924.

Present: RUGG, C.J., DeCOURCY, CROSBY, PIERCE, & CARROLL, JJ.

*Contract,* For release of motion picture film, Construction, Consideration, Performance and breach. *Pleading, Civil,* Demurrer. *Damages,* For breach of contract. *Words,* "Received."

A contract in writing relating to the furnishing of moving picture films by a distributor to a theatre contained a ninth clause reciting that in certain named contingencies, the distributor for reasons beyond its control might be unable to perform, and that, thereupon, it was "specifically agreed that the Distributor may, upon ten days' notice to the Exhibitor, cancel this contract." The following clause specified further

causes which would "be deemed to constitute a cause beyond the control of the Distributor within the meaning of this agreement." The exhibitor contended that the ninth clause was invalid for want of mutuality of consideration. *Held*, that, construing the contract as a whole, it was plain that the distributor could not produce pictures representing the artists named. in the contract and then deny the exhibitor releases of them and distribute them to other exhibitors, nor could the distributor cancel the contracts and so relieve itself from liability except upon the happening of the specific contingencies "beyond his control;" and that there was no want of mutuality.

The contract above described provided for releases of certain specified films on different dates. The exhibitor took and exhibited certain films released by the distributor and paid therefor according to the contract. Thereafter it refused to accept further releases and repudiated the contract. The distributor forthwith brought an action for breach of the contract. *Held*, that the circumstance, that under the contract some of the pictures were not to be released to the defendant until after the date of the writ in the action, did not prevent the plaintiff from recovery for failure of the defendant to take and exhibit such pictures: the plaintiff was not required to wait until the end of the time for the full performance of the contract in order to recover entire damages.

A demurrer to an entire declaration which contains many counts, some of which were based upon alleged breaches of a contract of unquestioned validity, properly may be overruled.

A clause of the contract above described provided, "The Exhibitor agrees further that so long as the United States Revenue Act or Acts, which impose a tax upon motion pictures, shall remain in effect, the Exhibitor shall pay to the Distributor, for all films received hereunder, in addition to amount of the film rental, the amount of said excise tax or taxes imposed upon said motion picture films, in such manner as is described by the Distributor." *Held*, that the word "received" was to be construed in accordance with its usual and natural meaning and that the defendant could not be required to pay in damages the amount of revenue tax upon films which it had not received.

The contract above described was neither a contract for a sale nor a contract for a lease: it contemplated a license and a bailment, and the usual rule for the assessment of damages for a breach of contract applied.

At the trial of the action above described, there was evidence that after a film had been produced many prints were made upon celluloid and sent to the various distributors' branches for release. The same picture was given approximately the same release date throughout the country. There were certain theatres called "first run" theatres which got the first release and exhibited the picture in given places. The defendant theatre was such a one, and the present action grew out of its contracts with the distributor to "accept" releases of a considerable number of motion pictures made by certain "stars" to be selected by the distributor from productions controlled by it. *Held*, that

(1) The plaintiff, after repudiation of the contract by the defendant, was free to sell the first run rights to others, and the value of those

rights should have been deducted from the contract price in determining the damages actually resulting to the plaintiff from the breach;

(2) On the evidence, it could not properly have been assumed by the trial judge that those rights were worth nothing to the plaintiff;

(3) If any of the first run rights were sold by the plaintiff after the contract was repudiated, the prices obtained would be evidence of their value; if the plaintiff, after making diligent effort to sell any of them, was unable to do so, that would be evidence that they were of no value; if the rights were found to be of no value, the plaintiff might recover the whole contract price;

(4) If the plaintiff was able to sell any of the first run rights for a sum in excess of the contract price, the defendant was not entitled to have such excess applied in reduction of damages sustained by the plaintiff in relation to any of the other films sold for an amount less than the contract price.

An examination of the contract above described did not disclose any agreement by the exhibitor to exhibit the films to be furnished by the distributor, and it was *held,* that the plaintiff was not entitled to have considered in his damages the loss sustained by him by reason of his not obtaining the advertising of his films through the newspaper advertising by the exhibitor and the exhibition of the films themselves.

CONTRACT for breaches by the defendant of agreements in writing relating to the receiving of, and paying for the use of, certain moving picture films.  Writ dated October 20, 1919.

After the allowance of an amendment to the declaration, a demurrer, which is described in the opinion, was filed by the defendant, was heard by *Morton,* J., and was ordered overruled.  The defendant appealed from such order.

The action then was tried before *Lawton,* J.  Material evidence is described in the opinion.  At the close of the evidence, a motion that a verdict be ordered for the defendant was denied.  The defendant then asked for the following rulings:

" 5. The alleged contracts are unenforceable to recover damages against the defendant because there is a lack of mutuality in the contracts.

" 6. Under the terms of clause 9 of each of said contracts each contract could be terminated by the plaintiff for any cause whatever and at any time by giving ten days' notice and, that being so, plaintiff cannot recover on said contracts.

" 7. On the evidence all the pictures delivered to defendant and exhibited were paid for.

" 8. It is a general principle of law, because it is a rule of fair dealing, that when one is deprived of the fruits of a contract, he must use the efforts of a reasonably prudent man to put himself in as good a position as he would have been in if the contract had not been abrogated and that principle is applicable to this case.

" 9. The plaintiff was required to use due diligence in getting all the profits reasonably possible out of the films or pictures which it is claimed defendant refused to take during the period the alleged contracts were to run.

" 10. If the jury find that plaintiff did not use due diligence in getting all the profits reasonably possible out of these pictures plaintiff cannot recover.

" 11. If the jury find that there was a market for these pictures or films for the first-run theatres in Boston and plaintiff refused, or neglected to sell the rights to exhibit these films or pictures, then plaintiff cannot recover.

" 12. If the jury find that with the exercise of reasonable diligence the plaintiff could have sold the right to exhibit these pictures to first-run houses for equal or better prices, plaintiff cannot recover of defendant.

" 13. If the jury find that the plaintiff intended to punish defendant and for that reason refused to avail itself of the market for these films, plaintiff cannot recover.

" 14. If plaintiff made no effort to dispose of these films in an available market until after the release dates had gone by, plaintiff cannot recover.

" 15. The plaintiff cannot recover in this action damages for any pictures the release dates of which were on or after the date of the writ, which is October 20, 1919.

" 16. None of the items set forth in the account annexed to the amendment to the plaintiff's declaration can be recovered for in this action.

" 17. Even if the jury should find plaintiff entitled to recover for any pictures or films prior to October 20, 1919, the defendant would be entitled to have deducted therefrom the amounts which plaintiff received for exhibiting such pictures at other first-run houses in Boston.

" 18. The plaintiff is not entitled to recover on the Gladys Leslie contract nor on the Bessie Love contract for plaintiff failed to perform these contracts and there was no legal excuse shown applicable here for its failure to perform these two contracts."

The requests were refused. Material instructions to the jury and exceptions by the parties are described in the opinion. There was a verdict for the plaintiff in the sum of $6,759.94, " which was reduced by the court after agreement of the parties to $6,286.90, of which latter sum $299.37 is made up of the revenue tax of five per cent with interest from date of the writ." Both parties alleged exceptions.

*J. P. Sylvia, Jr.,* for the defendant.

*Lee M. Friedman,* (*P. D. Turner* with him,) for the plaintiff.

CROSBY, J. This is an action by a distributor of moving picture films against a moving picture theatre (called the exhibitor), to recover damages for alleged breaches of six contracts for the release of films which the defendant failed to take, exhibit and pay for. The contracts were dated April 9, 1919, and all the releases that the defendant did take and exhibit were paid for before September 1, 1919. A verdict was rendered for the plaintiff and both parties filed bills of exceptions.

There was evidence that after a film has been produced a large number of prints are made upon celluloid and sent to the various distributors' branches for release. The same picture is given approximately the same release date throughout the country. There are certain theatres called " first run " theatres which get the first release and exhibit the picture in given places. The defendant theatre was such a one, and the present action grows out of its contracts with the distributor to " accept " releases of a considerable number of motion pictures made by certain " stars " to be selected by the distributor from productions controlled by it. The defendant took, exhibited and paid the contract price for some of the films; and in July, 1919, refused to take any more and repudiated the contracts. The six contracts were identical except that they varied in the description of the

films and the price to be paid. Each contract provided for rental by the plaintiff to the defendant of six separate pictures produced by six named artists.

1. It is the contention of the defendant that the contract, under the ninth clause (which permitted the plaintiff to cancel it upon ten days' notice), was invalid at its inception for want of mutuality, and that, as it was not binding upon the plaintiff, there was no consideration to support it. An examination of the entire contract shows that this contention is not tenable. The ninth clause recites that in the event of certain named contingencies, the distributor for reasons beyond its control might be unable to perform, and that therefore it is " specifically agreed that the Distributor may, upon ten days' notice to the Exhibitor, cancel this contract." The fact that the tenth clause specifies further causes which are to " be deemed to constitute a cause beyond the control of the Distributor within the meaning of this agreement," shows the significance to be attached to the enumeration of such causes as limiting the otherwise general right of cancellation under clause nine. Construing the contract as a whole, it is plain that the plaintiff could not produce pictures representing artists named in the contract and then deny the defendant a release of them and distribute them to other exhibitors; neither could the plaintiff cancel the contracts and so relieve itself from liability, except upon the happening of specific contingencies " beyond its control." This restriction of the plaintiff's rights was enough to render its promise a sufficient consideration; and for breach of the contract the defendant is liable. *Burgess Sulphite Fibre Co.* v. *Broomfield,* 180 Mass. 283. *Wellington Piano Case Co.* v. *Garfield & Proctor Coal Co.* 236 Mass. 544. *Bernstein* v. *W. B. Manuf. Co.* 238 Mass. 589. *McCall Co.* v. *Wright,* 198 N. Y. 143. *Central Trust Co.* v. *Chicago Auditorium Association,* 240 U. S. 581. *Alcazar Amusement Co.* v. *Mudd & Colley Amusement Co.* 204 Ala. 509; 19 A. L. R. 1006 note. *Philadelphia Ball Club, Ltd.* v. *Lajoie,* 202 Penn. St. 210. The case of *Bernstein* v. *W. B. Manuf. Co.* 235 Mass. 425, and the one between the same parties in 238 Mass. 589, and cases from other jurisdictions cited by the

defendant, are distinguishable in their facts from those in the case at bar. *Ellis* v. *Dodge Bros.* 237 Fed. Rep. 860. *Velie Motor Car Co.* v. *Kopmeier Motor Car Co.* 194 Fed. Rep. 324. *American Agricultural Chemical Co.* v. *Kennedy & Crawford*, 103 Va. 171. The defendant's exceptions for failure to give its fifth and sixth requests are overruled.

2. The circumstance, that under the contracts some of the pictures were not to be released to the defendant until after the date of the writ, does not prevent the plaintiff from recovery for failure of the defendant to take and exhibit them. The contracts were repudiated in July, 1919, and after they had been partially performed; the plaintiff was not required to wait until the end of the time for full performance in order to recover entire damages. *Speirs* v. *Union Drop Forge Co.* 180 Mass. 87, 90, 91, 92. The defendant's fifteenth and eighteenth requests were rightly denied.

3. The defendant appealed from an interlocutory order overruling its demurrer to the amended declaration. All the alleged grounds of demurrer relate either to the allowance of the amendment or to the accounts annexed. As the demurrer was to the entire declaration, and as there were numerous counts based upon alleged breaches of the contracts of unquestioned validity, the order overruling it was correct. *Sears* v. *Trowbridge*, 15 Gray, 84. *Granara* v. *Italian Catholic Cemetery Association*, 218 Mass. 387, 393.

4. Subject to the defendant's exception, the trial judge instructed the jury that in assessing damages the plaintiff was entitled to recover a United States revenue tax of five per cent under 40 U. S. Sts. at Large, 1125, § 906. The twenty-fourth clause of the contract provided that " The Exhibitor agrees further that so long as the United States Revenue Act or Acts, which impose a tax upon motion pictures, shall remain in effect, the Exhibitor shall pay to the Distributor, for all films received hereunder, in addition to amount of the film rental, the amount of said excise tax or taxes imposed upon said motion picture films, in such manner as is described by the Distributor." The tax which the act imposes is an " excise tax in respect to carrying on such

business equal to 5 per centum of the total rentals earned from each such lease or license during the preceding month." By the terms of the contract the liability to pay taxes under the act is limited to films "received" by the defendant; the word "received" so used is to be construed in accordance with its usual and natural meaning and cannot be held to include films not actually received by the defendant. *Daly v. Chapman Manuf. Co.* 246 Mass. 118. This exception therefore must be sustained.

5. The remaining questions raised by the defendant's exceptions numbered 8 to 14, both inclusive, and number 17, and to the charge of the judge relate to the measure of damages. The judge instructed the jury that the only question to be considered in this connection was "what was the agreed price for those pictures which they didn't take, and that is the measure of their damages." The defendant contended that it was entitled to be allowed for certain sums received by the plaintiff for releases by it of some of the pictures to other first run theatres than that of the defendant; also that the plaintiff could not recover if it had not made proper efforts to let the films to other first run theatres. There was evidence that, although notified in July, 1919, of the defendant's repudiation of the contracts, the plaintiff did not attempt to lease the pictures, except as a whole, until the release date set by it for the various pictures; and then, for the first time, made efforts to lease each film separately after its release date; and that it did sell three of them to first run theatres in Boston; and others for first runs to theatres not usually of that class. The evidence was in dispute as to how many first run houses there were in Boston besides that of the defendant, and whether there was a shortage of moving pictures in the summer of 1919. There was also evidence that there was no saving by the plaintiff from the defendant's failure to take the pictures; that the number of prints made from the original is governed by the contracts obtained therefor; that "after the first release follows the second release and after that the films are used or sent to smaller places;" that after the time fixed for releasing the first run the plaintiff did not attempt to

lease them because " there was a second run contract that followed in; that they had tied up all second runs and couldn't sell the first runs after the Park Theatre [contracts] expired without conflicting with the other contracts they had made; the Fenway Theatre was a theatre that had the second run contract and their dates were held up or held back for weeks at a time; that they had other contracts for a second run of these pictures they had to protect in respect to making sales."

Strictly the contract is neither for a sale nor for a lease: it contemplates a license and a bailment. *Orbach* v. *Paramount Pictures Corp.* 233 Mass. 281, 284. *Miller* v. *Miloslowsky*, 153 Iowa, 135, 137. The usual rules of damages for breach of contracts have been applied to actions by exhibitors for nondelivery of films. *Orbach* v. *Paramount Pictures Corp. supra. Broadway Photoplay Co.* v. *World Film Corp.* 225 N. Y. 104. *Vitagraph-Lubin-Selig-Essanay* v. *Billings*, 87 Okla. 192. There seems to be no reason why such rules should not apply to the present case. It was said in *John Hetherington & Sons, Ltd.* v. *William Firth Co.* 210 Mass. 8, at page 21, that the plaintiff is entitled to payment of such a sum as would place him in " the same position he would have been in, if the contract had been performed, so far as loss can be ascertained to have followed as a natural consequence and to have been within the contemplation of the parties as reasonable men as a probable result of the breach, and so far as compensation therefor in money can be computed by rational methods upon a firm basis of facts." The contract in the present case is different from a sale. There, if the transaction is consummated, the seller parts with all his interest in the property. It is not like a lease of land, for in that case the lessor will eventually get back all he parts with. Here the distributor does not part with all, for it has a right to the film upon termination of the contract in accordance with its terms; and also the right to dispose of it thereafter for subsequent exhibitions. But if the contract is consummated the distributor loses the possibility of making first run contracts, which in the nature of things cannot twice be carried out in the same district. The

plaintiff, after repudiation by the defendant, was free to sell the first run rights to others; what those rights were worth should have been deducted from the contract price in determining the damages actually resulting from the breach. On the evidence it could not properly have been assumed by the trial judge that those rights were worth nothing to the plaintiff. Their value was to be determined upon the evidence. If any were sold after the contract was repudiated, the prices obtained would be evidence of their value; if the plaintiff, after making diligent effort to sell any of them, was unable to do so, that would be evidence that they were of no value, and would permit the recovery of the whole contract price. *D. O. Haynes & Co.* v. *Nye,* 185 Mass. 507, 509. In *Druggists Circular, Inc.* v. *American Soda Fountain Co.* 240 Mass. 531, which related to a contract for advertising by the defendant in the plaintiff's magazine, the rule respecting damages above referred to is stated at page 535, as follows: " if the contract space was limited, and the plaintiff could get other advertisements which it could not have accepted except for the breach of the contract, the damages suffered must be less than the contract price."

*Mount Pleasant Stable Co.* v. *Steinberg,* 238 Mass. 567, presents a different application of the same rule: the plaintiff was allowed to recover the contract price less what it would have cost him to perform. In the present case, the cost of performance to the plaintiff was whatever the value of the first run rights that he was required to give the defendant under the contract was found to be upon the evidence. Under the rule stated in *Mount Pleasant Stable Co.* v. *Steinberg, supra,* the plaintiff might resell those rights to others if it could do so, upon such terms as to make a profit. It did in fact resell some of the films at an advance, but the defendant is not entitled to the benefit of that advance except to show the price obtained, as evidence that the value of the rights to the particular films so sold was equal to the contract price; and, also, to show that the plaintiff suffered no damage in respect to those films. The defendant is not entitled to have the sum received in excess of the contract price applied in reduction of damages sustained by the plaintiff by reason

of other films not resold, or of those which were resold for an amount less than the contract price, in the absence of any evidence of the value of the films so released. According to this rule of damages, the defendant was entitled to show that the pictures which it declined to take had a value in the plaintiff's hands which the plaintiff could have realized or did realize by a resale of the first run rights. The plaintiff, on the other hand, was entitled to show that the possibility of reselling those rights was of no or little value to it, either because there was no market for them, or because the only market which existed was one of which the plaintiff could not be expected to take advantage. This latter situation would occur if resales could be made only in such manner as to interfere with its other contracts. It might occur in other ways. In the present case there were apparently periods of time varying from one to six months between the date of the repudiation of the contracts and the respective release dates of the various films; and the jury could have found on the evidence that resales might have been made within that time without conflicting with any of the second run contracts which were testified to. Some resales were in fact made. On this state of facts the trial judge's charge was erroneous.

6. It remains to consider the plaintiff's exceptions to the exclusion of an offer of proof made by it, and to its requests for rulings in connection therewith. The plaintiff in substance offered to prove that at the time of making the contracts it was understood between the parties that in fixing the prices for the first run theatres, such as the Park Theatre, it was a part of the consideration that the distributor received the benefit of exhibiting its pictures contracted for at such theatres, " and that the advertising in the Boston papers of such exhibition and the exhibition itself was recognized in the trade as enabling the distributor to sell its pictures for second and subsequent runs to more people in the New England territory and at better prices than otherwise it would have been able to do; and that its failure to have its pictures so exhibited and advertised forced it to greater efforts and an increased expense to distribute its later releases to

exhibitors in other points of New England; " and that such increase in expense is capable of fairly exact calculation, and that the loss sustained was approximately $1,000 on each contract. Of course any agreements or understandings between the parties, except so far as they are expressly embodied in the contract or to be inferred therefrom, could not be considered. Unless by the terms of the contracts construed as a whole the defendant agreed to exhibit the films as well as to pay for them, and refused to do so as appears from the undisputed evidence, no question of damages by reason of failure to exhibit them arises. The contracts are to be construed in accordance with their terms and cannot be varied by oral agreements or undertakings entered into contemporaneously therewith. While probably it was the expectation of the parties at the time the contracts were entered into that the films should be exhibited, yet there is no promise or undertaking on the part of the defendant to do so. The second clause recites that " The motion pictures so delivered to be used solely by the Exhibitor for exhibition and for no other purposes . . . ." This means that the defendant will not use them for any other purpose; but it does not agree that it will use them for that purpose. In other words, it is left wholly to the exhibitor's option whether it will use them at all.

In the third clause the defendant agrees that " Payment [is] to be made one week in advance for the right to exhibit during the succeeding week such motion pictures for the number of days herein provided." The rights which the defendant obtained would seem to be the right to exhibit the films.

From an examination of the contract it does not appear that the defendant is obligated to exhibit the pictures delivered to it, nor to do any advertising. In the seventh clause it agrees not to use any advertising matter " except that which is purchased from or approved by the Distributor," but there is no provision by which the defendant binds itself to do any advertising whatever. As it was under no obligation to exhibit or advertise the pictures, the plaintiff's offer of proof was rightly excluded. In view of this con-

clusion, it is unnecessary to consider the other objections argued by the defendant to the offer of proof.

*Order overruling demurrer affirmed.*
*Defendant's exceptions sustained.*
*Plaintiff's exceptions overruled.*