EASTERN PAPER AND BOX CO., INC. *vs.* HERZ MANUFAC-
TURING CORPORATION.

Suffolk.   April 8, 1948. — June 30, 1948.

Present: QUA, C.J., DOLAN, RONAN, WILKINS, & SPALDING, JJ.

*Contract,* What constitutes, For commission. *Agency,* Scope of authority
or employment. *Corporation,* Officers and agents. *Evidence,* Com-
petency, Of agency, Declaration of deceased person. *Damages,* For
breach of contract.

Contracts are to be construed as bilateral rather than unilateral where
it is reasonably possible to do so.

Evidence, that a jobber of paper products impliedly promised to use
reasonable diligence to secure for a manufacturer of soda straws orders
for purchase of the straws by a certain customer and that the manu-
facturer promised to pay a commission to the jobber on all sales of
straws to the customer so long as such sales continued, would have
warranted a finding that thereby a bilateral contract arose, for breach
of which by the manufacturer by selling direcly to the customer and
refusing to pay the jobber's commission after complying with the terms
of the contract for a number of years, the jobber would be entitled to
recover.

Testimony of an assistant sales manager of a corporation warranted a
finding that he had authority to settle a bilateral contract with a
jobber not only as to payment of a commission to him for procuring
sales to a customer but also as to the period during which the com-
mission was to be paid, and to bind his corporation to continue to pay
the commission even if it sold directly to the customer.

Testimony, that one, deceased at the time of the trial, who had nego-
tiated a sales contract with the assistant sales manager of a manu-
facturing corporation, had stated to the witness that the assistant sales
manager represented the corporation, was inadmissible.

At the trial of an action for breach of an oral sales contract negotiated
by an assistant sales manager of the defendant, a manufacturing cor-
poration, and a representative of the plaintiff who had died before the
time of the trial, testimony of statements made to the witness by the
representative of the plaintiff as to the terms of the contract would be
admissible if the preliminary findings required by G. L. (Ter. Ed.)
c. 233, § 65, as appearing in St. 1943, c. 232, § 1, were made and there
were sufficient evidence of the authority of the assistant sales manager
to make the contract.

At the trial of an action for breach of a contract to pay a commission to
the plaintiff on sales of the defendant's goods to a certain customer
so long as such sales should continue, where the evidence would have

warranted a finding that the defendant had broken the contract by refusing to pay the plaintiff the commission on sales which the defendant had made and was continuing to make to the customer directly, it was error to rule that the plaintiff's "right of action should terminate" at the date of the writ, that the judge would "limit the right of damage to the date of the writ," and that prospective damages could not be shown.

CONTRACT. Writ in the Superior Court dated August 30, 1944.

The action was tried before *Dowd*, J.

*J. B. Abrams*, (*P. D. Epstein* with him,) for the plaintiff.

*E. Burke*, for the defendant.

RONAN, J. These are exceptions taken at the trial of an action of contract to rulings excluding certain evidence offered by the plaintiff, and to the direction of a verdict for the defendant.

There seems to be but little dispute that one Raymond, the assistant sales manager of the defendant, a manufacturer of paper products, including soda straws, was anxious to secure the soda straw business of the United Drug Company and its subsidiary the Liggett Drug Stores, and in January, 1938, promised the plaintiff, a manufacturer and jobber of paper goods, that, if the plaintiff would secure this business, the defendant would pay the plaintiff a commission on all orders accepted by the defendant. The plaintiff then secured orders for soda straws from the United Drug Company (hereinafter called the United) which were accepted by the defendant. The goods were shipped by the defendant and billed to the plaintiff. The plaintiff paid these bills after deducting its commission. This method of handling the business continued from 1938 to 1944 when Raymond, acting for the defendant, contracted directly with the United for the sale of the straws, and the defendant has since continued to sell straws to the United but has refused to pay the plaintiff any commission on these sales. The plaintiff also secured orders for the defendant's straws through a milk company for the Liggett Drug Stores (hereinafter called Liggett) which were forwarded to and accepted by the defendant. These goods were billed to and paid for by the plaintiff after deducting its commission from

the invoice price. The plaintiff secured these Liggett orders from 1941 to 1944. There was no evidence as to the reason why no orders for Liggett were received after February, 1944. The plaintiff makes no contention of any breach of contract so far as it concerned Liggett.

The contract which the parties made depended principally upon the conversations between Raymond and the officers of the plaintiff, and rested ultimately upon the credibility of witnesses whose testimony was conflicting in many material aspects. A jury could adopt Raymond's version of what was said between the parties and find that he did no more than offer to pay a commission on such orders as the plaintiff might choose to secure — but was not required to secure — from the United upon their acceptance by the defendant, which was free to accept or reject any or all of the said orders, and that no time was mentioned or specified within which such orders might be submitted by the plaintiff. Such an arrangement, if we assume it was not lacking in mutuality and consideration from the very beginning, *Bernstein* v. *W. B. Manuf. Co.* 238 Mass. 589; *Gill* v. *Richmond Co-operative Association, Inc.* 309 Mass. 73, would amount to no more than an offer to enter into a unilateral contract as to each particular order which would ripen into such a contract upon the obtaining of an order by the plaintiff and its acceptance by the defendant but which would not prevent the defendant from withdrawing the offer as to future orders which the plaintiff might secure after notice of such withdrawal nor fasten any liability upon the defendant if it saw fit to sell directly to the United without paying the plaintiff any commission on the sales thereafter to the United. *Jordan* v. *Dobbins*, 122 Mass. 168. *Des Rivieres* v. *Sullivan*, 247 Mass. 443, 446. *Elliott* v. *Kazajian*, 255 Mass. 459, 461, 462. *Globe Paper Co. Inc.* v. *Russell Box Co.* 291 Mass. 1, 9. *Maher* v. *Haycock*, 301 Mass. 594, 596. *Cramer* v. *Wood*, 302 Mass. 161, 164. *Corleto* v. *Prudential Ins. Co.* 320 Mass. 612, 616.

The plaintiff, however, contends that the defendant promised to pay a commission on all orders secured by the plaintiff from the United and Liggett and accepted by the de-

fendant and, if the defendant contracted directly with these concerns, then to pay commissions on all sales made to them; that the plaintiff promised to secure orders from these concerns; and that therefore the parties entered into a bilateral contract which was repudiated by refusing to pay the commissions to the plaintiff on the sales of soda straws to the United after the defendant began to deal directly with the United.

There was evidence that when Raymond requested Dooley, the president of the plaintiff, to secure the soda straw business of the United and of Liggett, he discussed with Dooley the manner in which the plaintiff should handle the business; and that in reply to a question of Dooley as to what would happen to the plaintiff if the defendant should sell directly to the United or Liggett, Raymond stated, "You will have this business as long as Herz straws are shipped to the United Drug or Liggett. It is your account,"; that so long as these two companies purchased the defendant's straws, "it is your business, and you will have the credit and the commission,"; and that so long as the United bought Herz straws it was the plaintiff's account. Thereafter for the next six years the business was conducted by the plaintiff alone dealing with the United, securing the orders, and ordering the goods from the defendant. All of these orders were accepted by the defendant, and upon all of them the plaintiff received a commission which it deducted from the invoices. It could be found that the parties contemplated that sales were to be made upon the orders which the plaintiff was to secure from the United, and that the success of the undertaking depended upon the ability of the plaintiff to obtain these orders for the defendant's goods. We think that it could be found that in making the contract the plaintiff impliedly promised to use reasonable diligence to secure the orders from the United, [1] that it was performing

---

[1] *Alexander* v. *McPeck*, 189 Mass. 34. *Noble* v. *Mead-Morrison Manuf. Co.* 237 Mass. 5, 18. *Palmer Electric & Manuf. Co.* v. *Underwriters' Laboratories, Inc.* 284 Mass. 550, 556. *Flynn* v. *Kenrick*, 285 Mass. 446. *Eno Systems, Inc.* v. *Eno*, 311 Mass. 334, 339. *Sacramento Navigation Co.* v. *Salz*, 273 U. S. 326. *Watson Bros. Transportation Co. Inc.* v. *Jaffa*, 143 Fed. (2d) 340. *Ogdens, Ltd.* v. *Nelson*, [1903] 2 K. B. 287. *M'Intyre* v. *Belcher*, 14 C. B. N. S. 654. *Turner* v. *Goldsmith*, [1891] 1 Q. B. 544.

its part of the contract and would have continued to do so when the defendant took over the soda straw business of the United, and that the defendant had no right to sell straws to the United without paying the promised commission to the plaintiff, even though the defendant had a right to terminate the contract by refusing to sell to the United, an event which did not occur. *Revere* v. *Boston Copper Co.* 15 Pick. 351, 361. *Orbach* v. *Paramount Pictures Corp.* 233 Mass. 281, 286. *Vitagraph, Inc.* v. *Park Theatre Co. of Boston,* 249 Mass. 25. Williston, Contracts (Rev. ed.) § 1027A.

Contracts are to be construed as bilateral rather than as unilateral where it is reasonably possible to do so. Restatement: Contracts, § 31. *Bridges-Wilson Corp.* v. *University Contracting Co.* 314 Mass. 257, 259. The consideration for the promise to pay a commission so long as the United purchased the defendant's straws could be found to be the promise of the plaintiff to secure this business for the defendant; in other words, there was a bilateral contract upon a present consideration. *Edmund D. Hewins, Inc.* v. *Marlboro Cotton Mills,* 242 Mass. 282. *Wilson* v. *Harper,* [1908] 2 Ch. 370. *Levy* v. *Goldhill,* [1917] 2 Ch. 297.

The plaintiff was entitled to have the evidence viewed in its aspect most favorable to it, and the question whether the contract was made as contended by the plaintiff should have been submitted to the jury, if Raymond had authority to make it. *Hammond Coal Co. Inc.* v. *Lewis,* 248 Mass. 499, 501. *Rizzo* v. *Cunningham,* 303 Mass. 16, 20, 21. *Murphy* v. *Nelson,* 306 Mass. 49, 50, 51. *Gleason* v. *Mann,* 312 Mass. 420, 423. [1]

The authority of an agent may be shown by his testimony. *Haney* v. *Donnelly,* 12 Gray, 361. *Smith* v. *Milne,* 262 Mass. 113. *Segal* v. *Allied Mutuals Liability Ins. Co.* 285 Mass. 106. Although Raymond testified that he never agreed to pay a commission so long as the United purchased the defendant's soda straws, he also testified that the plaintiff wanted ten per cent commission and that he offered seven

---

[1] There was not such a material variance between the declaration and the evidence as would support the direction of a verdict for the defendant on that ground.

and one half per cent; that the decision to pay ten per cent was not made by him; that the plaintiff was paid ten per cent; that he "is not trying to tell the jury that he did not have authority to make terms on the selling contract, that he was the assistant sales manager, and that he is not trying to say that to get this business in Boston he had to ask somebody in New York whether to get it or not; that he told Dooley and Alman [the plaintiff's president and treasurer respectively] that all he could give them was seven and one half per cent." This testimony was introduced without objection, and the jury could give it the probative weight that they deemed it should have. *Orpin* v. *Morrison,* 230 Mass. 529, 531–532. *Solomon* v. *Dabrowski,* 295 Mass. 358, 359. *Ventromile* v. *Malden Electric Co.* 317 Mass. 132, 135. The jury could construe this testimony of Raymond as referring only to the rate of the commission, but they also could infer that this testimony fairly implied that Raymond had authority to settle the terms of a selling contract with the plaintiff, not only as to the commission but also as to the period during which it was to be paid. It would seem to be natural for a selling agent to protect his commission in case the manufacturer should take over his customer, and the situation would not seem to be an unusual one for a sales manager to encounter in dealing with selling agents. The jury could find that authority to fix the terms of the contract, which the agent said he had, would include the power to make an arrangement with the selling agent respecting the event of the defendant's taking over the customer found by the selling agent. We think the evidence was sufficient to take the question of the authority of Raymond to the jury. *Jefferds* v. *Alvard,* 151 Mass. 94. *DuBois* v. *Powdrell,* 271 Mass. 394, 397–398. *Jackson* v. *Colonial Provision Co. Inc.* 314 Mass. 177, 179.

The plaintiff offered to prove by its bookkeeper that Alman, who had been its treasurer and was deceased, had stated to her that the defendant, represented by Raymond, had agreed to pay the plaintiff a ten per cent commission for all soda straws used by the United or Liggett, and that this account would be the plaintiff's account so long as these

concerns purchased the defendant's straws. The judge excluded the evidence on the ground that Alman, if alive, could not give such testimony. He did not reach the preliminary question whether these purported statements of Alman were made in good faith on matters within his personal knowledge. G. L. (Ter. Ed.) c. 233, § 65, as appearing in St. 1943, c. 232, § 1. The offer was not made to show the expected answer to a particular question, *Hallwood Cash Register Co.* v. *Prouty,* 196 Mass. 313, but was submitted generally in support of the plaintiff's contention as to the nature and terms of the contract that was made. *Hartigan* v. *Eastern Racing Association, Inc.* 311 Mass. 368. The statement that Raymond was representing or acting as agent of the defendant was inadmissible. Alman could not so testify if he were a witness. *Beaucage* v. *Mercer,* 206 Mass. 492, 500. *Commonwealth* v. *Henry W. Berry Co.* 256 Mass. 491. And at the time the offer was made no evidence had been introduced sufficient to support a finding that Raymond was acting as agent.

In view of the fact that there must be a new trial, it might be proper to point out that the evidence, contained in the offer as to what Alman stated were the terms of the alleged oral contract, will be competent if the preliminary findings for its introduction are made as required by the statute and sufficient evidence is introduced to make Raymond's authority an issue of fact. The declarations of a deceased person relative to the terms of an oral contract are not matters beyond the scope of the statute. *Tenney* v. *Foss,* 268 Mass. 69, 71. *Kulchinsky* v. *Segal,* 307 Mass. 571, 573.

The judge excluded evidence that the plaintiff was ready, able and willing to continue to handle the business of the defendant from 1944 up to the time of the trial as it had prior to 1944 when the defendant took over the business of the United. The judge ruled that the plaintiff's "right of action should terminate" at the date of the writ, that he would "limit the right of damage to the date of the writ," and that prospective damages could not be shown. The plaintiff then offered to prove that damages since the date of the writ amounted to $20,000, and excepted to the ex-

clusion of such proof. There was evidence that the defendant had continued to sell straws to the United up to the time of the trial. The plaintiff could show the damages which it sustained as a natural and probable result of the alleged breach of the contract. It could show the value of the contract to it and what it would have obtained if the promised performance had been completed. The plaintiff was entitled to such compensation as would put it in as good a position as it would have been in if the breach had not occurred. The loss of profits which follow as a natural consequence of a breach of contract, and which may reasonably be supposed to have been within the contemplation of the parties at the time they made the contract as a probable result of a breach, may be introduced in evidence if proved by a reasonable degree of certainty. *John Hetherington & Sons, Ltd.* v. *William Firth Co.* 210 Mass. 8, 21. *Hawkins* v. *Jamrog*, 277 Mass. 540, 543. *Galvin* v. *Nutting-Pillman Amusement Co.* 284 Mass. 314, 315. *Graustein* v. *H. P. Hood & Sons, Inc.* 293 Mass. 207, 221. The fact that action was commenced before the date or the happening of the contingency upon which the contract was to expire does not bar the recovery of the entire damages any more than it would if the writ was dated after the date or time fixed for the termination of the contract. *Cutter* v. *Gillette*, 163 Mass. 95. *R. H. White Co.* v. *Jerome H. Remick & Co.* 198 Mass. 41. *Loughery* v. *Huxford*, 206 Mass. 324. *Gagnon* v. *Sperry & Hutchinson Co.* 206 Mass. 547, 555. *Neal* v. *Jefferson*, 212 Mass. 517. *Wier* v. *American Locomotive Co.* 215 Mass. 303. *Tompkins* v. *Sullivan*, 313 Mass. 459. *Buckley & Scott Utilities, Inc.* v. *Petroleum Heat & Power Co.* 313 Mass. 498.

*Exceptions sustained.*