## THE SAM & PRISCILLA.

## MILLS v. LINEN THREAD CO.

(District Court, D. Massachusetts. September 26, 1921.)

No. 1942.

1. Sales ☞273 (1), 428—Manufacturer of seine held under Sales Act impliedly to warrant its fitness; breach of warranty prevents recovery and subjects to action for damages.

Under Massachusetts Sales Act, § 17, the seller of a purse seine, which it contracted to manufacture for a fishing vessel for use in mackerel fishing, *held* to impliedly warrant its fitness for such use, and not entitled to recover the price of the purse line, which was defective and repeatedly broke when the seine was first used, whether it made the line itself or purchased it from another, and also *held* liable for damages for breach of contract.

2. Admiralty ☞14—Contract to furnish seine to fishing vessel held a maritime contract.

A contract to furnish a seine to a fishing vessel *held* a maritime contract, and a suit thereon within the admiralty jurisdiction.

In Admiralty. Suit by the Linen Thread Company against the schooner Sam & Priscilla, Alden A. Mills, claimant, and cross-suit by said Mills against the Linen Thread Company. Decree for respondent in first suit, and for libelant in second suit.

Michael F. Shaw, of Boston, Mass., for libelant.
Carlton W. Wonson, of Gloucester, Mass., for respondent.

MORTON, District Judge. By agreement of parties these cases were heard together. Most of the facts are not in dispute, and were covered by an oral agreement between counsel made in open court; there was no material conflict of evidence. The claimant in the first case admits that all the items sued for were delivered to and received by the schooner Sam & Priscilla, and are due and payable, unless the matters hereinafter set forth constitute a defense.

In February, 1919, Wollard & Brewster, agents for the schooner, ordered from the Linen Thread Company a purse seine for mackerel. The Thread Company, in accepting the order, wrote to them:

"We will coal-tar and rig complete in the usual manner, with corks, leads, rings and purse line."

In the memorandum of the contract the size of the purse line is stated "2-inch," which was proper, and the length "300 fathoms"; there were no further specifications of it. The contract was made and was

---

to be performed in Massachusetts. The price of the seine complete was about $3,500. The purse line was selected by the Thread Company, and with the seine was duly delivered and placed on board the schooner. It was used occasionally during about six weeks in herring and pollock fishery. Then the schooner began mackerel fishing. The first time the seine was used for that purpose the purse line broke, allowing a good-sized catch of fish to escape. It was spliced, but broke again when fish were in the seine. After this had happened several times the schooner abandoned the trip chiefly on that account, and returned to port. The line was discarded and another purchased to take its place, which worked all right and lasted through the season.

The purse line was not manufactured by the Thread Company, but was purchased by it from the Plymouth Cordage Company, which is a reputable maker of such goods. Neither Wollard & Brewster, nor Mr. Mills, the owner of the schooner, knew whether the Thread Company made or bought it. They contracted with the Thread Company to furnish a perfect and complete seine with purse line, and relied on it to do so.

The claim of the schooner is that the line was defective and unfit for the purpose for which it was furnished by the Thread Company; that she is therefore not obligated to pay for it, and is entitled to recover as damages the loss which she sustained by reason of its unfitness. There is no evidence, except the testimony of Capt. Meade that the rope was "rotten," as to the character of the defects which caused it to break, whether obvious or not, nor as to what precautions, if any, the defendant took to ascertain whether the rope was suitable for the purpose for which it sold it. There was no express warranty of the purse line by the Thread Company. The claim of the libelant Mills, owner of the schooner, rests upon an implied warranty that the complete seine, including the purse line, was fit for the use for which it was sold, which was known to the Thread Company.

The testimony for Mills is that a purse line ought to last a season or more; that during the use before mackerel fishing was begun this line was properly cared for; and that complaint about it was made by the captain to the agents on his return from the mackerel trip and was passed on by them to the Thread Company, which refused to do anything on the ground that it (the Thread Company) did not manufacture the line, and did not guarantee articles not manufactured by it. Capt. Meade testifies—the evidence not being objected to as hearsay—that one Chisholm, from whom the replacement was bought, supplied a second-hand line, saying he did so "because there were so many poor new purse lines." Apparently war conditions caused more or less of the bolt rope manufactured and sold at this time to be of inferior quality. The line itself is not produced. There is no evidence whether its use in herring and pollock fishery and improper care might have so weakened it as to account for its condition when used later in mackerel fishing. While the evidence on the point cannot be regarded as very satisfactory, it seems to me that the purse line probably was defective when delivered by the defendant; that it was not reasonably fit for the·

purpose for which it was furnished, which purpose was known to the defendant; and that it was not of merchantable quality.

[1, 2] The rights of the parties are determined by the Massachusetts Sales Act; and on these facts it is clear that the Thread Company is not entitled to recover the price of the purse line. Gen. Laws Mass. 1920, c. 106, § 17. Whether Mills is entitled to recover against the Thread Company for breach of the implied warranties of reasonable fitness and merchantability (Laws Mass., supra) depends upon whether his libel states a cause of action within admiralty jurisdiction. In suits on contracts that jurisdiction is dependent not upon arrest of the vessel, nor upon the relief sought, but upon the subject-matter of the contract sued upon, whether "maritime" or not. Benedict on Admiralty (4th Ed.) §§ 143, 145, and 147, collecting cases. In The Hiram R. Dixon (D. C.) 33 Fed. 297, Judge Benedict held that a contract to furnish nets to a fishing vessel was a maritime contract. The contract here in question was, in my opinion, of that character, and either party might sue upon it in the admiralty courts. The memorandum of it was made to Wollard & Brewster; but they acted in the transaction as agents of Mills, which was known to the Thread Company, and its salesman, Mr. Syer, testified that this "seine and accessories" were sold to Mr. Mills as owner of the Sam & Priscilla. Mills can maintain suit on the contract in his own name as a party to it.

Decrees may be entered disallowing the item for purse line in the Thread Company's libel, allowing the other items in it, and referring Mills' libel to an assessor to state the damages.