## In re BURTON S. S. CO.

(District Court, D. Massachusetts. February 2, 1925.)

No. 32676.

**Maritime liens** ⬤25—**Use of canal held a "necessary."**

Under Merchant Marine Act, § 30, subsec. P (Comp. St. Ann. Supp. 1923, § 8146¼ooo), amending Act June 23, 1910, § 1, and broadening its scope as to necessaries, the use of Cape Cod Canal is a "necessary," and the charge for such use is secured by a maritime lien.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Necessary.]

In Bankruptcy. In the matter of the Burton Steamship Company, bankrupt. On review of order of referee. Reversed.

Frederick Foster, of Boston, Mass., for Elizabethport Coal & Supply Co.

William J. Nolan, of Boston, Mass., for Boston, Cape Cod & New York Canal Co.

LOWELL, District Judge. This is a petition to review an order of Mr. Referee Black.

The proceeding involves a question of considerable doubt and difficulty, which, so far as I am aware, has never been decided. It relates to the true construction of the Maritime Lien Act of 1920 (Comp. St. Ann. Supp. 1923, § 8146¼ et seq.). The section involved is an amendment of the prior Act of June 23, 1910 (Comp. St. § 7783 et seq.). The former act was passed to remedy an intolerable situation which had arisen in the courts of the United States over the very varying decisions which had been rendered on the question of liens on vessels for repairs and supplies. The distinction had been drawn between a vessel in her home port and a vessel in a foreign port; this gave rise to conflicting rules of law. There was also a discrepancy in the decisions as to when and under what circumstances the repairs or supplies should be held to have been furnished on the credit of the vessel. State statutes of various kinds further complicated the matter. The various confusing questions above outlined have been very ably described by FitzHenry Smith, Jr., Esq., in 21 Harv. Law Rev. 332, and 24 Harv. Law Rev. 182.

The act of 1910 was passed to clarify this situation. It did away with the state statutes, with the distinction between home and foreign ports, and also with the necessity of proving that the credit of the vessel had been relied on. On the latter point, the act designated certain persons who alone were authorized to bind the vessel. A further

element of confusion, not yet entirely removed, was the question of what happened when a vessel was chartered. We are not concerned with this in the present case.

The original act of 1910 was strictly construed by the courts who took a narrow view of the statute. The Federal Maritime Lien Act, by John W. Griffin, Esq., 37 Harv. Law Rev. 15.

The decision in the case at bar depends on the meaning of the amendment of 1920. The phraseology of the amendment is significant. The original act was as follows:

"Any person furnishing repairs, supplies, or other necessaries, including the use of dry dock or marine railway, to a vessel, whether foreign or domestic, upon the order of the owner or owners of such vessel, or of a person by him or them authorized, shall have a maritime lien on the vessel which may be enforced by a proceeding in rem, and it shall not be necessary to allege or prove that credit was given to the vessel." 36 Stat. 604 (Comp. St. § 7783).

Under this act it was held that towage was not covered by the act, because the act read, "repairs, supplies and other necessaries, including the use of dry dock. * * *" Several courts held that the words "and other necessaries" should be limited to a class similar to that indicated by the words "repairs and supplies," and that therefore towage, and also stevedoring, did not come within the terms of the statute. The J. Doherty (D. C.) 207 F. 997; The Muskegon (D. C.) 275 F. 117; Griffin, op. cit.

In the amendment of 1920 the Congress added "towage" and changed the position of the words "and other necessaries," and the statute now reads as follows:

"Any person furnishing repairs, supplies, towage, use of dry dock or marine railway, or other necessaries, to any vessel, whether foreign or domestic, upon the order of the owner of such vessel, or of a person authorized by the owner, shall have a maritime lien on the vessel, which may be enforced by suit in rem, and it shall not be necessary to allege or prove that credit was given to the vessel." Subsection P of section 30, Act of June 5, 1920, 41 Stat. 1005 (U. S. Comp. St. Ann. Supp. 1923, § 8146¼ooo).

It will be noticed that all of the things which are specifically mentioned are now enumerated before the words "and other necessaries." Judge Cushman, in the case of The Henry S. Grove (D. C.) 285 F. 60, held that this showed a congressional intention to enlarge the scope of the statute. In The Neponset (D. C.) 300 F. 981. I said that

I agreed with Judge Cushman's ruling. I see no reason to change this opinion. The decision in The Suelco (D. C.) 286 F. 286, seems opposed to that case, but the learned judge who delivered the opinion did not refer to the difference in phraseology between the two acts of Congress. On the general subject as to what services or supplies give rise to liens under the act of 1920, see The Susquehanna (1923) A. M. C. 643, 3 F.(2d) 1014; The Egeria (1924) A. M. C. 126, 294 F. 791.

The question then comes up: Is the use of a canal a necessary within the *broadened* scope of the act of 1920? In Monongahela Co. v. Tugboat Bob Connell (C. C.) 1 F. 218, Judge McKennan held, very properly under the then existing law, that the use of locks in the Monongahela river did not give rise to a lien on the tugboat Bob Connell, as the boat was in its home port. The latter point might seem doubtful, but as the Monongahela river is near Pittsburgh, where the vessel hailed from, it is not surprising that Pittsburgh should consider that river as part of its territory. The learned judge, however, said:

"It cannot be doubted that lockage [a conveniently invented word, the meaning of which is apparent], is of the same general nature and in the same category with the claims involved in these cases."

The judge was there referring to The General Smith, 4 Wheat. 438, 4 L. Ed. 609, to The Lottawanna, 21 Wall. 558, 22 L. Ed. 654, and to Ex parte Easton, 95 U. S. 68, 24 L. Ed. 373. The first of these cases involved supplies; the second, mariner's wages, salvage, supplies, and repairs; and the third involved wharfage. It is thus apparent that Judge McKennan regarded "lockage" as a necessity. That case is not precisely an authority for the present one, since the Monongahela river could not have been used by the tugboat without using the lock, while in the present case the steamboat could have gone around Cape Cod without using the canal. This hardly seems, however, a sufficient reason for making a distinction. In my opinion the act of 1920 was passed by Congress to give a more extended scope to the original act. I am therefore of the opinion that the charges for the use of the canal gave rise to a lien on the steamship Carisco. As I have said before, the question is not free from doubt, and it is with some hesitation that I overrule the finding of the learned referee.

Petition allowed; finding of Mr. Referee Black reversed.