4 F.Supp. 953 (1933)
THE HENRY S.
REED & RICE CO., Inc.,
v.
ADAMS et al.
No. 5795.
District Court, E. D. Virginia.
July 22, 1933.
*954 C. S. Towles, of Reedville, Va., and Kelsey & Jett, of Norfolk, Va., for libelant.
John W. Oast, Jr., of Norfolk, Va., for respondent.
F. J. Dean, Jr., of Norfolk, Va., and Charles Ruzicka, of Baltimore, Md., for intervener.
R. O. Norris, Jr., of Lively, Va., and John W. Oast, Jr., of Norfolk, Va., for cross-libelant Northern Neck Finance Co.
WAY, District Judge.
The libel in this proceeding is against the fishing boat Henry S, a motorboat about 52 feet long, her fishing outfit and equipment, "including three nets and rings and lines thereto, and 400 fishing stakes or poles."
The title to the Henry S was in respondents, R. F. and Carroll Adams, doing business as Adams Brothers, from some time in 1927 until certainly as late as December 13, 1932. On or about December 13, 1932, R. B. Moore, Incorporated, at the instance of Adams Brothers, installed in the Henry S an engine at the contract price of $864. Following the installation Moore executed and delivered to Adams Brothers a writing signed by both parties designated, "Contract of Sale of Goods and Chattels Reserving Title," in an attempt to comply with the provisions of section 5189 of the Code of Virginia as amended by Acts 1923 (Ex. Sess.) c. 159 relating to conditional sales of personal property, where the title thereto is reserved in the vendor until the purchase price is fully paid. This contract purports to transfer conditionally to Adams Brothers title, not only to the engine, but also to "1-50 boat," and "fishing outfit including three nets and equipment."
The evidence signally fails to disclose any prior valid transfer of the Henry S to Moore, so that the attempt of the latter to reserve title to the boat was futile, since that company had never been the owner of the boat and was, therefore, not in a position conditionally to transfer title to any one, much less to Adams Brothers who were already the owners. On account of this and other facts rendering the contract invalid as an instrument reserving title, it is not necessary for the court to determine the relative dignity as between a valid conditional sale contract and maritime liens. The intervener, Northern Neck Finance Corporation, elected to assert a maritime lien against the boat for $764, the balance of the purchase price of the engine.
On December 13, 1932, Moore duly assigned for full value the contract covering the sale of the engine to said Northern Neck Finance Corporation. The delivery and installation of the engine by Moore, and the assignment and transfer of its claim against the boat, engine, and equipment, to the finance corporation are parts and parcels of one transaction, so that the finance corporation, I think, clearly occupies the same position as to the Henry S and its proper equipment which Moore did, unless the finance corporation has by other proceedings on its claim waived its right to assert a maritime lien in this proceeding.
Adams Brothers failed to make the required payments on the engine, and on April 6, 1933, the finance corporation obtained a judgment by confession against them in the circuit court of Northumberland county, on *955 their homestead waiving note for $764, covering the balance of the purchase price of the engine. Execution issued on the judgment, upon which execution the sheriff has made the following return: "May 20, 1933, at the request of the plaintiff the return `no property' is hereby made. J. E. Anderson, Sheriff."
It further appears that respondents, R. F. and Carroll Adams, have filed homestead deeds claiming their respective homestead exemptions in certain property, among which are the nets and poles in question.
At the trial it was urged by libelant, but denied by the finance corporation, that this judgment has been paid, or at least that it is a lien on real estate of ample value to satisfy it in full, without the necessity of the finance corporation asserting any claim against the Henry S, or her equipment, but no evidence was offered by libelant to support that contention.
It was also urged that the finance corporation by taking said proceedings in the state court has waived its right, if any, to assert a maritime lien against the Henry S. The finance corporation has filed exceptions to the libel, urging, among other points, that the three nets and poles are no part of the equipment of the Henry S.
The nets in question are what are ordinarily known as "pound" nets. When libeled the marshal found them in Chesapeake Bay, about three miles off shore, and southeast of the Great Wicomoco Lighthouse. The pound poles referred to are from 48 to 62 feet in length and were driven into the ground to a depth of from 6 to 15 feet. The nets were permanently attached to the poles by rings and other fastenings, for the duration of the fishing season, which usually commences some time in March and lasts for about three months, or until around the middle of June. The Henry S was not used in driving the pound poles and the nets were never delivered to and have never been on her.
During the fishing season respondents used the Henry S for towing a 32-foot boat to and from the nets. This latter boat alone was used for taking fish from the nets and bearing them ashore. At the close of a fishing season it is the regular practice to take these nets and such of the pound poles as are pulled up ashore and to store them there until the fishing season the following year. The work of repairing the pound nets is performed while they are on shore. In the autumn and winter the Henry S was used by Adams Brothers in oystering. Apparently, the Henry S, the three nets, and the poles are all of the property owned and used by respondents, Adams Brothers, in their fishing operations, and the nets referred to in the contract between R. B. Moore, Incorporated, and Adams Brothers, are the same that were libeled in this cause. The 32-foot boat mentioned above does not belong to Adams Brothers and was not attached. In order legally to operate these nets Adams Brothers were required to obtain a license from the Virginia oyster inspector covering the place at which they were located, which license covered a period of 12 months.
The defense that Moore, Incorporated, has been paid for the engine, and consequently that no debt representing the purchase price of the engine now exists, is without merit. The situation on which libelant relies to sustain that contention results solely from Moore's selling and assigning its claim against the vessel for a necessary furnished to and installed therein. The finance corporation, upon taking the assignment and paying Moore the balance due for the engine, assumed the position theretofore occupied by Moore. A complete answer to the contention is that Adams Brothers, the debtors, have paid only $100 of the $864 representing the original purchase price of the engine.
1. Is the finance corporation entitled to assert a maritime lien against the Henry S and her equipment?
It seems to me that this question must be answered in the affirmative. That corporation's assignor furnished and installed in the boat a new engine to replace an old one. That the engine was such a supply or necessary as entitled the person furnishing it to a maritime lien against the boat is not open to debate. And while the finance corporation's assignor attempted unsuccessfully to retain title to the boat and engine pursuant to provisions of the Virginia statute, I can see no sound reason why that act barred Moore or its assignee from claiming a maritime lien on the boat for the value of the engine. The Pearl (D. C.) 189 F. 540; In re Gambrill Mfg. Co. (D. C.) 283 F. 349; The E-270 (D. C.) 16 F.(2d) 1005, engine installed in boat; Ricou & Sons v. Fairbanks, Morse & Co. (C. C. A.) 11 F.(2d) 103, engine and other equipment installed in boat; The Fannie F. Hickey,[1] 1931 A. M. C. 794, 800. And see the comment of the court in The Katherine (D. C.) 15 F.(2d) 387, at page 388.
*956 2. Has the finance corporation, by taking judgment in the state court on the note covering the purchase price of the engine, waived its right to assert a maritime lien against the Henry S?
The finance corporation as a result of the assignment from Moore acquired a promissory note which represented a personal claim against the makers, R. F. and Carroll Adams, and at the same time acquired a lien against the Henry S for the value of a necessary or supply furnished to and installed in that vessel. By pursuing the personal claim the finance corporation has obtained a personal judgment against the makers, but that judgment remains unsatisfied. How may it properly be said that as a result of that unfruitful proceeding the finance corporation has lost its other remedy for the collection of at least a part of its claim by enforcing its lien against the vessel? It would seem that the creditor should be permitted to pursue each of the remedies open to it until it finally collects. In The Eastern Shore (D. C. Md.) 24 F.(2d) 443, 444, the court so held, quoting from the opinion by Judge Benedict in The Brothers Apap (D. C.) 34 F. 352, as follows: "`The only question in the case arises out of the fact that prior to instituting this proceeding the libelant brought suit against the master of the vessel in a state court for these same supplies, in which action he recovered a judgment against the master, but of which judgment he has been unable to obtain any satisfaction. The contention on the part of the claimant is that the libelant lost his lien upon the ship by suing the master as he did. I cannot agree with the claimant in this contention. Upon principle, it seems to me that in cases where a lien upon the ship arises, and also a personal liability on the part of the master and the owner as well, the creditor must be allowed to pursue each of these remedies in succession, until he obtains satisfaction of his debt. That he should be able to do this seems to me to be the reason why these several remedies are given by law. Surely the value of the rule will be largely diminished if it be held that a futile attempt to enforce the master's personal liability deprives the creditor of the benefit of the ship's liability.'"
Libelant relies on The Kalorama, 10 Wall. 204, 218, 19 L. Ed. 941, where the court, referring to the effect of another proceeding then pending for the enforcement of the same claim, said that, "Had the judgment been rendered it might be different." The court in The Eastern Shore Case points out that this expression was a mere dictum and clearly was not intended by the Supreme Court to indicate its views as to what would be the effect of reducing the claim to judgment in the other proceeding.
3. Are the pound nets and poles part of the equipment of the Henry S?
I think it is clear that this question should be answered in the negative. It is true that the decisions have been liberal, holding "not merely those things which are physically material and absolutely necessary to her existence or preservation which are incorporated into her, or used on board" to be necessaries for a vessel, "but also those which a careful and provident owner would provide, to enable her to perform well the functions which, as a maritime agent, she is designed to perform." 1 Benedict On Admiralty, pp. 87-89 and 138-139; The Artemis (D. C.) 53 F.(2d) 672; The Pinthis (C. C. A.) 286 F. 122.
However, no decision has been called to the attention of the court which holds that "necessaries," as used in the statute, includes pound nets and poles operated as those in controversy are shown to have been operated at the time they were attached. Cases holding that seines, seine boats, and purse nets were necessary to enable a fishing vessel properly to perform the functions for which such vessel was designed, are cited on behalf of libelant. The Hiram R. Dixon (D. C.) 33 F. 297, nets furnished to a vessel for the purposes of a menhaden fishing voyage; The Mountaineer (C. C. A.) 286 F. 913, vessel designed and built to be used for purse seine fishing only; The Geisha (D. C.) 200 F. 865, seine boat towed by steamer and used by her on fishing trips; The Sam & Priscilla (D. C.) 275 F. 937, purse seine for catching mackerel, and the same case on appeal, Linen Thread Co. v. Shaw et al. (C. C. A. 1) 9 F. (2d) 17. But I think that the radically different manner in which these pound nets were operated is decisive of the question now under consideration. The owners had set and were operating the nets in stationary and permanent positions. While the pound nets were set, the power of the Henry S was not used to move, manipulate, or handle them. That vessel was used merely as a means of conveying the owners to and from the nets and to tow the smaller boat. The pound nets were not a necessary or even convenient part of the equipment of the Henry S and were never carried aboard her. In the cases last above referred to, the owner was operating a fishing boat as a business, using its power to move, manipulate and handle the nets and *957 seines which were in no way attached to land, but were regularly carried and used by the fishing boat as a part of its equipment. In the instant case each pound net, at the time it was attached, constituted a mechanical fisherman complete in itself and in no way dependent upon the Henry S to aid in capturing fish, while in the cases referred to, the boat itself was the mechanical fisherman and the nets, seines, or seine boats were merely parts of its equipment.
The court's conclusions, therefore, are that the nets and poles do not constitute a part of the equipment of the Henry S; that as to them the libel will be dismissed, and all claims for materials supplied to the nets will be disallowed.
The claims of libelant, Reed & Rice, Incorporated, and interveners for materials supplied or repairs made to the Henry S will be allowed.
The claims filed by or on behalf of seamen for wages earned while working on the Henry S will be allowed in the amounts shown by the testimony of the respondent R. F. Adams, with leave for such claimants, in case they desire to contest the correctness of the amounts testified to be due them by said respondents, to offer additional testimony on that question.
Upon presentation, an order in conformity with the foregoing conclusions will be entered.
NOTES
[1] Commissioner's report.