**LAYTON INDUSTRIES, INC.**

v.

**The SPORT FISHING CRUISER GLADIATOR, her engines, tackle, apparel, equipment and furniture et al.,**

v.

**Matthew ANTELL and Frank P. Marchetti.**

**No. 64-71-F.**

United States District Court
D. Massachusetts.

Feb. 2, 1967.

Michael B. Latti, Katz & Kaplan, Boston, Mass., for libellant.

J. Owen Todd, Hale & Dorr, Boston, Mass., for defendant.

John G. Serino, Putnam, Bell & Russell, Boston, Mass., for Matthew Antell.

Frank P. Marchetti, Somerville, Mass., pro se.

## OPINION

FRANCIS J. W. FORD, District Judge.

This is a libel in admiralty brought against the sport fishing cruiser GLAD-IATOR to recover for supplies, equipment and labor furnished to the vessel during July and August of 1964. All States Leasing Corporation as owner made claim to the vessel, posted bond for its release, and filed an answer to the libel. It also interpleaded Matthew Antell and Frank P. Marchetti as third-party defendants.

In July of 1964 the vessel was owned by Marchetti. It was berthed at a marina in Boston Harbor of which Marchetti was at least part owner. Antell was associated with Marchetti in the operation of the marina. In particular he was hired by Marchetti to take charge of the GLADIATOR, to hire it out to parties who wished to charter it for fishing trips, to act as captain of the vessel on such trips, and to check on the maintenance and repair of the vessel. He discussed with Marchetti the need for radar equipment on the vessel, and told Marchetti he was going to get prices for the installation from libelant and another supplier.

In fact, Antell did telephone Graves, the president of libelant, told him he had a vessel which he was operating for fishing parties, and discussed with him the installation of radar equipment. Antell asked for a price for such installation, saying that he needed prices so he could report to the owner. A tentative price for the installation of the equipment was given him.

Shortly thereafter Graves visited the vessel, met Antell aboard it, and inspected it. Agreement was reached as to installation of the desired equipment for $2600, $500 to be paid before installation. On July 10 libelant's employees began work on installing the radar. Before work was begun Graves asked Antell for the advance payment and Antell paid him $500 in cash which he testified was taken from money he had collected from rental of the boat and had kept on board. Installation of the radar took three days. Libelant's employees also checked and repaired the radio telephone and fathometer on the vessel. On a subsequent date one of libelant's employees accompanied Antell on a trip around the harbor on the vessel to check operation of the radar at sea and make needed adjustments. The total charge for equipment and services furnished to the vessel by libelant was $2675. The balance of $2175 remaining due after the advance payment of $500 has never been paid.

Libelant originally billed Antell for the amount due. On being informed by Antell that Marchetti would pay the bill,

Graves telephoned Marchetti on several occasions. Marchetti said he knew of the radar and was going to pay the bill. Finally on Graves' last telephone call, sometime in August, Marchetti said he was not going to pay.

On August 7, 1964 Marchetti sold the GLADIATOR to All States Leasing Corporation, the claimant here.[1] The inventory list attached to the bill of sale listed the radar as part of the vessel's equipment. Marchetti at no time informed claimant that the radar had not been fully paid for. The bill of sale signed by Marchetti contained the provision:

> "And, that I hereby covenant with the grantee that I am the lawful owner of the said goods and chattels; that they are free from all encumbrances that I have good right to sell the same as aforesaid; and that I will WARRANT and defend against the lawful claims and demands of any and all persons."

Libelant claims a maritime lien under the provisions of 46 U.S.C. § 971, which provides:

> "Any person furnishing repairs, supplies, towage, use of dry dock or marine railway, or other necessaries, to any vessel, whether foreign or domestic, upon the order of the owner of such vessel, or of a person authorized by the owner, shall have a maritime lien on the vessel, which may be enforced by suit in rem, and it shall not be necessary to allege or prove that credit was given to the vessel."

■ A valid maritime lien under this section can be a secret one and will be valid against a subsequent purchaser in good faith and without notice. Piedmont & George's Creek Coal Co. v. Seaboard Fisheries Co., 254 U.S. 1, 12, 41 S.Ct. 1, 65 L.Ed. 97. Hence claimant here is not helped by the fact that it had no knowledge of the lien and purchased the vessel in the belief that the radar equipment had been fully paid for. Claimant does contend on several grounds that no valid lien on the vessel ever arose.

Claimant's principal argument is that libelant dealt only with Antell who was not the owner of the vessel or a person authorized by the owner. Claimant contends that in fact libelant dealt with Antell as owner and in reliance on the credit of Antell and not the credit of the vessel.

■ It is true that libelant may have received a false impression that Antell was the owner. Antell did not claim at any time to be the owner but Graves may have misinterpreted his statement that he was operating the vessel as a statement of ownership. However, aside from the fact that libelant had had some earlier business dealings with Antell, there was no evidence to indicate that libelant was relying on Antell's personal credit. There is nothing to rebut the presumption created by § 971 that necessary supplies furnished to the vessel are furnished upon the credit of the vessel. The Astorian, 9 Cir., 57 F.2d 85. And there is no evidence to indicate that libelant intended to rely exclusively on the credit of Antell. Libelant could rely both on the credit of the individual and that of the vessel without losing its lien. Piedmont & George's Creek Coal Co., supra, 254 U.S. at page 10, 41 S.Ct. 1. Nor does the supplier lose his lien because he bills the owner (or supposed owner) rather than the vessel. The Denelfred, D.C., 59 F.2d 213, 215.

■ Although Antell was not the owner, he was a person authorized to bind the vessel. He had express authority from Marchetti to have the radar installed. This is clear from his own testimony [2] and corroborated by the fact that

---

1. Claimant since obtaining release of the vessel has since resold it.

2. Claimant misconceives the rule applicable to testimony of an agent. Evidence of the supposed agent's extra-judicial statements or declarations is not admissible to prove his agency. Hennessey v. Cities Service Refining Co., 282 Mass. 487, 489, 185 N.E. 7; Newburyport Institution for Savings v. Inhabitants of Brookline, 220 Mass. 300, 306, 107 N.E. 939. But the agent's own testimony in

Marchetti when asked to pay for the installation admitted knowledge of it and several times agreed to pay. In fact, even when he ultimately refused to pay he made no contention that Antell had acted without authority.

 Moreover, Antell was clearly the master of the vessel and the person to whom its management at the port of supply had been entrusted and as such a person presumed to have authority to bind the vessel under the provisions of 46 U.S.C. § 972.

Claimant contends that libelant should be barred for failure to make diligent inquiry as required by 46 U.S.C. § 973 as to whether Antell had authority. The effect of § 973 is to deny a lien where the person ordering the supplies was without authority to bind the ship and the supplier knew this fact or could have ascertained it by exercise of reasonable diligence. It has no application here, where Antell in fact had authority to bind the ship, and further inquiry, if made, would only have shown this to be the fact.

Claimant further argues that libelant has failed to show that the radar equipment was necessary to this fishing vessel. Of course, the radar was not absolutely necessary. The vessel had operated without it and could continue to do so. Absolute necessity, however, is not required. The word "necessaries" should be broadly interpreted. J. Ray McDermott & Co., Inc. v. The Off-Shore Menhaden Co., 5 Cir., 262 F.2d 523. The test is whether the supplies or services furnished are reasonably needed in the ship's business. Walker-Skageth Food Stores, Inc. v. The Bavois, 43 F.Supp. 109, 110. Radar equipment has become common aboard vessels as an aid to safe navigation. It clearly was a convenient and useful addition to the GLADIATOR to enable it to carry on more efficiently

and safely its business. United States v. F/V Sylvester F. Whalen, D.C., 217 F.Supp. 916.

The conclusion must be that libelant had a valid maritime lien as claimed in the amount of $2175 and is entitled to judgment for that amount.

Since the claimant under its bond becomes liable for the payment of this amount, it is in its turn entitled to recover from the third-party defendant Marchetti under the terms of the covenants and warranty contained in his bill of sale. However, third-party defendant Antell was not the owner of the boat and had no part in the sale transaction. Claimant has shown no ground which would entitle it to recover against him.

Judgment will be entered for libelant in accordance herewith. On the third-party claim, judgment will be entered for claimant against third-party defendant Marchetti, and for third-party defendant Antell against claimant.

---

court can be used to prove his agency. Murphy Auto Parts v. Ball, 101 U.S.App. D.C. 416, 249 F.2d 508; Worcester Felt Pad Corp. v. Tucson Airport Authority, 9 Cir., 233 F.2d 44, 59 A.L.R.2d 1121; Eastern Paper and Box Co., Inc. v. Herz

Manufacturing Corporation, 323 Mass. 138, 80 N.E.2d 484; Segal v. Allied Mutuals Liability Ins. Co., 285 Mass. 106, 188 N.E. 504; Haney v. Donnelly, 12 Gray 361.