. **Robert E. BLAIR, Plaintiff,**

**v.**

**M/V BLUE SPRUCE, her engines, tackle, apparel and furniture, Defendant.**

**Civ. A. No. 70–115.**

United States District Court,
D. Massachusetts.

June 23, 1970.

Max C. Fischer, Katz, Kaplan & Latti, Michael B. Latti, Boston, Mass., for plaintiff.

Richard B. Kydd Kneeland, Splane & Kydd, Boston, Mass., for defendant.

OPINION

JULIAN, District Judge.

Plaintiff brought this admiralty case to recover pilotage fees allegedly owed him by defendant. Defendant moved to dismiss and quash warrant of arrest.

The facts set forth in plaintiff's complaint, which on a motion to dismiss are

assumed to be proven, are as follows: Plaintiff, a pilot licensed under the laws of Massachusetts, offered his services on December 30, 1969, to the master of defendant vessel which was bound for the port of Gloucester. After the master refused the services, plaintiff informed him that he would be held to pay the legal fees for pilotage whether the services were accepted or not. On the same day, as the vessel was proceeding from the port out to sea, plaintiff again offered his services to the master, this time to pilot the ship to sea. When the master refused the service, plaintiff informed him that he would be liable for the fee whether or not he accepted the services.

On January 7, 1970, plaintiff's lien was approved by a Deputy Pilot Commissioner for the Commonwealth of Massachusetts. This action was commenced on January 21, 1970; on February 6, 1970, defendant moved to dismiss and quash warrant of arrest. The basis of defendant's motion is twofold: first, that the lien under the laws of the Commonwealth of Massachusetts is invalid since the Federal Maritime Lien Act supersedes State statutes conferring liens, and, second, that plaintiff has no lien under general maritime law because, to obtain a lien, pilotage services must actually be furnished.

■ Massachusetts has a statutory network regulating the commission and services of pilots, Mass.G.L. c. 103, §§ 1–35. Under this system,

"A pilot shall have a lien for his pilotage fees upon the hull and appurtenances of every vessel liable to him therefor under this chapter for sixty days after the completion of his services; but the lien shall not be enforced until approved by the commissioners."

Mass.G.L. c. 103, § 17. In this case the services were refused. However, under Massachusetts law a vessel is liable for a pilot's fee even though her officers refuse the services. See Mass.G.L. c. 103, §§ 21–24, and 26. Under Massachusetts law plaintiff clearly has a lien against the vessel for his services. Unless the

Massachusetts regulatory scheme is superseded by federal law, then plaintiff's lien is valid and defendant's motion must be denied.

In 1920 Congress enacted the Federal Maritime Lien Act, 46 U.S.C. §§ 971–975, a section of which provides:

"This chapter shall supersede the provisions of all State statutes conferring liens on vessels, insofar as such statutes purport to create rights of action to be enforced by suits in rem in admiralty against vessels for repairs, supplies, towage, use of dry dock or marine railway, and other necessaries."

46 U.S.C. § 975. If plaintiff's services are encompassed by this statute, then the State-created lien is superseded by federal law; this issue depends upon whether pilotage which is tendered but refused is a "necessary" within the meaning of the federal statute.

To effectuate the purposes of the statute, courts have held that the phrase "other necessaries" should be broadly interpreted. See J. Ray McDermott & Co. v. The Off-Shore Menhaden Co., 1959, 5 Cir., 262 F.2d 523, rehearing denied Feb. 11, 1959; City of Erie v. S.S. North American, 1967, W.D.Pa., 267 F.Supp. 875; Layton Industries, Inc. v. The Sport Fishing Cruiser Gladiator, 1967, D.Mass., 263 F.Supp. 356 (Ford, J.); Allen v. The M/V Contessa, 1961, S.D. Tex., 196 F.Supp. 649. One recent case from this district has phrased the test as whether the services are reasonably needed in the ship's business. See Layton Industries, Inc. v. The Sport Fishing Cruiser Gladiator, 1967, D.Mass., 263 F.Supp. 356 (Ford, J.). Under this statute a variety of items have been found by courts to be "other necessaries." A sampling of the more unusual items includes Colonial Press of Miami, Inc. v. The BMV Allen's Cay, 1960, 5 Cir., 277 F.2d 540 (printing materials); The Susquehanna, 1923, D.Mass., 3 F.2d 1014 (fumigation of passengers' baggage); In re Burton S.S. Co., 1925, D.Mass., 3 F.2d 1015 (Cape Cod Canal charges); City of Erie v. S.S. North American,

1967, W.D.Pa., 267 F.Supp. 875 (wharfage); Allen v. The M/V Contessa, 1961, S.D.Tex., 196 F.Supp. 649 (cigarettes). One item of personal service, fairly similar to piloting, which has been held to be an "other necessar[y]" is stevedoring. *See* In re North Atlantic and Gulf Steamship Co., 1962, S.D.N.Y., 204 F.Supp. 899, 907, aff'd sub nom. Schilling v. Dannebrog, 1963, 2 Cir., 320 F.2d 628; The Little Charley, 1929, D.Md., 31 F.2d 120; United States v. Certain Subfreights Due S.S. Neponset, 1924, D. Mass., 300 F. 981, rev'd on other grounds, United States v. Robins Dry Dock and Repair Co., 1926, 13 F.2d 808; The Henry S. Grove, 1922, W.D.Wash., 285 F. 60; International Terminal Operating Co., Inc. v. S.S. Valmas, 1967, 4 Cir., 375 F.2d 586 [dictum].

■ Although there is a dearth of cases squarely facing whether pilotage is an "other necessar[y]," the cited instances of "necessaries" tend to support the view that pilotage is a necessary.[1] Furthermore, the only references to the issue imply that pilotage services create a lien either under general maritime law, The Alligator, 1908, 3 Cir., 161 F. 37 [dictum], or under the Federal Maritime Lien Act, G. Gilmore & C. Black, The Law of Admiralty, p. 516 (1957). Based upon the above analysis, it would seem that pilotage should be considered an "other necessar[y]," and that the State statute conferring a lien is superseded by the federal act.

From this conclusion it does not follow automatically that defendant's motion to dismiss and quash warrant of arrest should be granted. While one section of the Federal Maritime Lien Act provides that State statutes conferring liens for "other necessaries" shall be superseded, 46 U.S.C. § 975, another provision creates a federal lien for

"[a]ny person furnishing repairs, supplies, towage, use of dry dock or marine railway, or other necessaries * * *."

46 U.S.C. § 971. The two sections are part of the same Act of 1920 and there is no evidence that the meaning of "necessaries" varied from one section to the other. Indeed, the reasonable inference is that State statutes conferring liens on certain items were superseded because federal law now established liens for the identical items. Consequently if pilotage is a "necessar[y]," the State statute is superseded but the federal one may create a lien.

Maritime liens under federal law are granted to "[a]ny person furnishing * * * other necessaries * * *." 46 U.S.C. § 971. Since in this case plaintiff's proffer of services was rejected, the issue becomes whether he "furnish[ed]" services within the meaning of the Act. It is indisputable that plaintiff did not actually serve as pilot for the vessel. He was prevented by the master from fulfilling that role. Nevertheless, the complaint avers that plaintiff offered to pilot the vessel. There is no reason to suppose that plaintiff could have done anything further in attempting to render service.

Although no case is exactly on point, examining analogous cases is helpful. The Geisha, 1912, D.Mass., 200 F. 865, concerned repairs to a water boiler. The parts were placed on shore alongside the ship, but bankruptcy prevented completing the repair. The issue was whether the services had been "furnished." Attempting to define "furnishing" the Court stated:

"It may not be necessary to prove that the materials have been actually incorporated into the vessel; but I cannot doubt that they must appear to have been delivered to her, either on board her, or at least 'within the immediate presence and control of her officers' * * *."

*Id.* at 868.[2] Holding that the materials were "furnished," the Court concluded that delivery on the wharf "may not un-

---

1. *See also* G. Gilmore & C. Black, The Law of Admiralty, p. 543 (1957): "The present state of the law is not far from the point where any service which is 'con-

venient, useful and at times necessary' may qualify as a lien under the Lien Act."

2. For another court holding that necessaries may be furnished by delivery at

reasonably be regarded as the equivalent of delivery." *Id.* at 869.[3]

There is no federal statute providing that pilot fees are recoverable even though the services are refused, nor does any controlling precedent hold that pilot services are furnished when offered. Nonetheless, on balance the better view appears to be that plaintiff should be deemed to have furnished pilot services if they were required by law and if plaintiff tendered the services and was ready, willing and able to perform them.

As a matter of policy this result is sound. The Commonwealth of Massachusetts has been regulating the commissioning of pilots and their fees since 1783, see St.1796, c. 85, § 12; St.1862, c. 176, reg. 5; St.1918, c. 56, § 2; St. 1783, c. 13, §§ 2, 6, and 10; St.1862, c. 176, § 17; St.1857, c. 221, § 1, long before the federal regulation in question. Since the enactment of the Federal Maritime Lien Act the State continues to regulate its pilots. Although from the above analysis the State statute conferring liens is superseded, this Court should be slow to undermine the entire State regulatory scheme. Ever since 1851 the United States Supreme Court has recognized the legitimate State interest in requiring vessels to engage local pilots. See Cooley v. Board of Wardens of Port of Philadelphia, 1851, 53 U.S. (12 How.) 299, 13 L.Ed. 996. In *Cooley* a Pennsylvania statute required vessels to employ pilots or to pay a fine. Massachusetts has seen fit to require vessels to pay the pilot's fee even though the tendered services are refused. Both statutes, it might be thought, express concern that only competent and experienced helmsmen navigate local harbors. In *Cooley* the Supreme Court recognized that this subject was of a peculiarly local nature.

■ This Court effectuates the State policy by holding that the plaintiff, who proffered his services but was refused,

"furnish[ed]" an "other necessar[y]" and is entitled to a federal lien. Any other result frustrates the State interest. If a pilot only has a lien when the services have actually been performed, then the master simply refuses the services and the pilot has no recourse.

■■ Plaintiff's substantive right to payment is under Massachusetts law, see Mass.G.L. c. 103, §§ 21–24 and 26. These statutes are not abrogated by the Federal Maritime Lien Act. The Act did not pre-empt the entire field, but only lien-conferring statutes regarding certain items. For fifty years since passage of the federal Act, the State has functioned by licensing pilots. This Court should not, at this late date and without legislative approval, prohibit the State from continuing its regulatory scheme.

Absent authority or persuasive reasoning to the contrary, the more reasonable interpretation is that plaintiff "furnish[ed]" services within the meaning of the federal statute and is entitled to a lien under federal law.

---

the side of the vessel, see The Denelfred, 1932, E.D.Mich., 59 F.2d 213.

3. *See* The Rancagua, 1919, 5 Cir., 256 F. 843, which held that so long as a contract

for stevedoring services is wholly executory, the plaintiff did not "furnish" services. *Cf.* First Safe Deposit National Bank of New Bedford v. The North Star, 1960, D.Mass., 185 F.Supp. 815.